# Charles T. Russell, Appellant, *v.* Rock Run Fuel Gas Company.

*Corporations—Sale of property by stockholder to corporation—Equity—Promoter.*

A stockholder in a corporation who is not an officer or agent of it has a right to deal with the company at arms' length as a stranger might.   If he sells property to it more than a year after it has been organized and operated by a board of directors, the fact that he had been a promoter of the company at its organization is immaterial to affect the validity of the sale.

Where a large stockholder in a corporation, who by his position and experience wields large powers, makes a sale to the company at a high price and at a big profit to himself, he must show that the transaction was fair, and that he made no wrongful use of the legitimate influence of his experience in the business.

A stockholder's bill against a corporation and another stockholder to compel the latter to give up stock and cash which he had received for property alleged to have been fraudulently sold to the corporation is properly dismissed, where it appears that the stockholder defendant, although a promoter of the company at its inception, had not sold the property in question for more than a year after the company's organization ; that he had used no fraud or solicitation in inducing the directors to make the purchase ; that the purchase seemed at the time advantageous to the company, and that plaintiff knew of the proposed purchase at the time he bought his stock.

Argued Oct. 29, 1897.    Appeal, No. 118, Oct. T., 1897, by plaintiff, from decree of C. P. No. 2, Allegheny Co., October Term, 1896, No. 325, dismissing bill in equity.    Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN and FELL, JJ.    Affirmed.

Bill in equity for a receiver and for an account.
The facts appear by the opinion of the Supreme Court.

*Error assigned* was in dismissing bill in equity.

*J. S. Ferguson*, with him *E. G. Ferguson*, for appellant.— The facts found by the court entitled the plaintiff to a decree in his favor: Rice's App., 79 Pa. 168.    It is idle to say that Snee was a mere stockholder dealing at arms' length with his company.    He was directing the policy of the company.    It is a fair inference that he was acting as a mere agent, possibly self constituted, but nevertheless an agent: Simons v. Vulcan Oil & Mining Co., 61 Pa. 202.

*P. C. Knox, J. H. Reed* and *Edwin W. Smith*, for the Rock Run Fuel Gas Co., cited Northwest Transportation Co. v. Beatty, L. R. 12 Appeal Cases, 589.

*James Bredin*, for John A. Snee, cited McElhenny's App., 61 Pa. 195.

OPINION BY MR. JUSTICE DEAN, January 3, 1898 :
John A. Snee, being the owner of gas wells and a small pipe line, in Jefferson and Mifflin townships, Allegheny county, on August 26, 1893, entered into a contract with the Campbell

Glass Co. to supply it with 576,000 feet of gas per day for a period of five years. Without the right of eminent domain, he had secured by contract a right of way for his pipe line for a short distance, but was hampered for want of power to extend it; to obviate this, he procured the incorporation of a gas company under the act of 1885. To comply with the law, he induced five of his friends, Owings, Rindfus, Boyd, McGrew and St. John, to join him in the application for a charter, and in articles of association wherein they were named directors. The capital stock was $1,000, whereof Snee paid the ten per cent required by law. On October 30, 1893, the capital stock was increased to $75,000, being 1,500 shares each of par value of $50.00. The name of the corporation was the "Rock Run Fuel Gas Company." On the same day of the increase of the capital of the corporation, Snee proposed to sell to the company at the price of $50,000 certain wells and pipes, as well as the contract to supply the glass company, the amount to be paid him in stock of the company at par. At the same time, his wife, Mrs. Kate A. Snee, proposed to sell to the company a certain well owned by her for $10,000, the price, also, to be paid in the stock of the company at par. Both propositions were accepted by the company, through its board of directors. Again, on January 6, 1894, the company, on Snee's offer, bought from him certain rights of way and pipe for the sum of $8,081.55, of which $81.55 was paid in cash and the remainder in stock of the company at par. On November 3, 1893, as a result of prior negotiations, Charles T. Russell, this appellant, purchased and received a transfer from Snee of 300 shares of the stock. At a stockholders' meeting held in January, 1894, the first directors were re-elected. At the next annual meeting, in January, 1895, through dissensions among the stockholders, there was no election, and the old directors held over for another year. Soon after the company commenced operations it was discovered, that it was unable to supply the gas required by the contract with the Campbell Glass Co. Snee, on October 29, 1894, had become the owner of another well, known as Dean No. 1, and to add to the capacity of the company, it purchased from him this well, at the price of $6,500, payable, cash, $1,500, and stock of the company at par, $5,000. In December following, with the same object in view, he sold the company another well, known

as Morgan No. 1, at the price of $7,000 cash. The capacity thus increased enabled the company to fill its contracts, up until November, 1895, when the supply again fell short. Snee then procured other wells, the Wylie and Brickerton, and made a contract with Morris Beatty Steel Company to supply it with gas, and sold the new wells and the contract to the gas company for $40,000, taking in payment stock of the company. Thereupon, at the suggestion of Russell, for himself and other stockholders, this bill was filed against Snee and the company, averring among other facts : 1. That the board of directors was entirely under the control and influence of Snee, and at his instance, in entire disregard of the interests of the company and other stockholders, had recklessly and negligently purchased from him at exorbitant prices the Morgan well, Dean well, Wylie and other wells ; also parts of pipe lines ; the aggregate price paid being $53,000, while in fact they were worth but $18,200. 2. That at the time of said sales, said Snee had knowledge of the small value of the wells, yet in fraud of the company, with the knowledge of the directors, the sales were made. 3. That at the organization of the company, it was promised and agreed by Snee that he would procure wells and use his best efforts to promote the success of the company, at the cost of the same to him ; that the wells sold by him to the company were purchased by him for it, under this understanding.

The prayers of the bill were, that: 1. A receiver be appointed. 2. That Snee be directed to restore to the company the cash and stock received by him, less the cost of the purchase by him, or the fair and reasonable value thereof. 3. General relief.

To this the company made answer, denying all material averments of the bill, and alleging that the property purchased was a necessity to the company in its operations, and that the prices paid were fair and reasonable, and that all the transactions were of benefit to all the stockholders. Snee, also answered, denying all fraud and overreaching, all undue influence exercised by him over the board of directors, and alleging the prices received for the property were fair, and less than he could have obtained from others at the time of sale.

On the issue thus made up the court below heard the testimony. The facts, in addition to those already stated, as found by the court, were : That Russell, this appellant, knew at the

time he purchased his stock, that the incorporation of the company had been procured by Snee, and he knew also of the property that Snee proposed to sell to the company in payment for the stock, part of which stock he was to get; that the property transferred by Snee to the company was necessary to its operations ; that the Morgan and Dean wells, sold to his company for $13,500, cost Snee but $2,310, and were not in fact worth half the price paid by the company; that the property put in for the original stock was not worth more than half the price put upon it; that at a stockholders' meeting in January, 1896, a majority, by vote, etc., ratified the purchase at the price paid; that the evidence establishes that the purchases were made by the directors recklessly and without examination ; nevertheless they were not made collusively with Snee; nor does the evidence show corruption or fraud; that while Snee was a large stockholder, and the dominating power in the company, yet there is nothing in the evidence to indicate that he acted corruptly, or unduly persuaded, or even discussed the transactions with, the directors ; that the company at first paid large dividends, but as the gas supply rapidly fell off, no dividends have been paid since July, 1894.

On these facts, the court concludes as matter of law : 1. That Snee occupied no fiduciary relation towards the company or fellow stockholders ; 2. Being only a stockholder he had the right to sell his property to the company at such price as the company was willing to pay, there being no fraud practiced by him, actually or constructively. The decree therefore was that the bill be dismissed at plaintiffs' costs.

The appellant argues, on the single assignment of error, that the findings of fact should have impelled the court to an altogether opposite conclusion of law; that Snee being the original projector of the corporation and its dominating power, although nominally only a stockholder, he could not sell to the corporation property at a profit. Rice's Appeal, 79 Pa. 168, is relied on as sustaining this view. It will be noticed that no complaint is made in the bill as to the original transaction by which Snee and his wife sold to the company for $60,000 the property with which it commenced operations; nor could there well be by Russell, this plaintiff, who was an experienced oil operator, and had full knowledge of the property and the bargain when he

was negotiating for and bought his stock. The contention turns on the transactions specified in paragraphs 1, 2 and 3 of the bill, which aver reckless purchases at exorbitant prices, of the Dean, Morgan, Wylie and Bickerton wells, and certain pipe lines connected with these wells. These properties were purchased, it is alleged, for $53,000, when they were not worth exceeding $18,200. All these purchases were made after the company had been in operation more than a year. On the nominal price paid in stock of the company at par Snee's profits were large. The mental process by which the learned judge of the court below arrived at the conclusion that the profit was enormous does not, however, seem clear to us. It is this : natural gas is of very uncertain production; these wells purchased by the company may very soon become exhausted; therefore, the price paid was too high. But look at the other side: the purchaser, a gas company, pays for these wells which are to form a large part of its future supply, almost wholly with its own stock. Necessarily, if the wells are worthless, the stock based on them is of no greater value; and while the difference between the actual cost to Snee and the nominal price received may indicate some profit, it does not by any means follow that the real profit is the difference between the cost and the nominal price. The fact is, from this testimony, the whole business is uncertain. In the first five months of the company's existence it paid a profit of two per cent a month on its capital stock; then some of the wells gave out, and profits ran down to nothing, then, on the purchase made of the Wylie and Bickerton wells, in October, 1895, the net receipts again ran up to $1,000 per month, and the production, contrary to all experience, is increasing. It is apparent, that the value of a gas well and the value of gas stock are speculative; the value of both depends on the unknown. But assuming that Snee made a profit, he was but a stockholder and, as such, he had a right to deal with the corporation as if at arms' length. This is conceded by counsel for appellant, and also by Rice's Appeal, supra, as a general proposition; but it is argued that Snee was the promoter of this corporation and its dominating power. As to being a promoter, that position, at the date of the sales complained of, no longer existed; that question might have been raised, as to the property transferred at the inception of the enterprise, but it is not. The company

was promoted into existence, organized, and operated by its board of directors, more than a year before the last purchases; whatever he might have been at first, he was not then a promoter. It is evident, however, that Snee was a large, if not a majority, stockholder at the date of these purchases. He was also a gas operator of great experience in the business, and doubtless exercised a controlling influence in the company. He was not an agent, but simply by his position and experience wielded large powers. We assume, therefore, that he comes within the scope of Rice's Appeal, supra. He must show that the transactions by which he profited were, under the circumstances, fair. There is no evidence that he sought to influence the board or a single director. Every one of them testified he never attempted to do so, and that each had acted for what he deemed the best interests of the company. If he was not an agent or officer to purchase for the company as the undisputed evidence shows he was not; if he made no wrongful use of the legitimate influence that his long experience and superior knowledge of the business would naturally give him, then, the plaintiff has no case.

We think the decree of the court below was right on the facts. It is therefore affirmed, and the appeal is dismissed at costs of appellant.