DOWNEY *et al. v.* BYRD *et al.*

534

No. 7664.   December 10, 1930.

*Kelley & Kelley, J. Alton Hosch,* and *Troutman & Troutman,* for plaintiffs.

*Branch & Howard,* for defendants.

HINES, J.   J. H. Downey, D. C. Kelley, and J. T. Johnston filed their equitable petition against Cora M. Byrd and her husband, Charles P. Byrd, in which they made these allegations: In December, 1926, the Byrd Publishing Company was chartered under the laws of the State of Delaware, with a minimum capital stock of 10 shares.   Mark W. Cole, James H. Hughes, and James L. Walcott, citizens of Delaware, were the incorporators.   The application for charter by these parties was made, and the issuance thereof to them was had, at the instance of the defendants.   After the corporation had been chartered, the incorporators sold and transferred their shares to Cora M. Byrd.   She caused one share of

this stock to be placed in the names each of her husband, Charles P. Byrd, J. O. Noel, and S. L. Mackie, evidently for the purpose of qualifying them to act as directors and officers of this corporation. Mrs. Byrd in promoting said company procured her husband to call a meeting of the stockholders, which was held on January 23, 1927. At that meeting a resolution was passed, providing for the issuance by the company of 1436 shares of preferred stock of the par value of $100 per share, and 3926 shares of common stock without par value, but to be sold at $50 per share. Then Mrs. Byrd, as the promoter of the organization of the Byrd Publishing Company, offered to sell to this corporation the physical assets and good will of the Byrd Printing Company for 1436 shares of its preferred stock and 3826 shares of its common stock, which offer was unanimously accepted, and the officers of the company were directed to issue to her the above stock in full payment for such assets. The assets of the Byrd Printing Company were treated as owned entirely by Mrs. Byrd and her husband, the charter of said company having expired several months before that date. After this increase of the capital stock was voted by Mrs. Byrd, the majority stockholder, and after her offer to take said increased capital stock in exchange for the Byrd Printing Company assets, she caused a preliminary organization to be perfected, and elected her husband president, Noel vice-president and treasurer, and Mackie secretary. The officers of the company were directed to make application to the Securities Commission for a permit to sell the balance of the preferred stock to the amount of 2500 shares, and to increase the common stock of the company to 5000 shares. This application was granted. All of the above things were done in promoting and organizing the Byrd Publishing Company for the purpose of entering the field of publishing text books and school books, all of which acts were unknown to plaintiffs and to other subscribers to its stock until the plan of organization aborted and the perfection of the organization failed. All the things which were done in the organization of the Byrd Publishing Company and in the promotion of the stock sales were done by defendants, Noel and Mackie being mere automatons.

Whatever action was taken by the officers and directors, who were elected by Mrs. Byrd, was done in carrying out the commands of the defendants, who continued to be the promoters of the proposed

Byrd Publishing Company. All stock was sold at their instance. The application was made to the Securities Commission for the purpose of selling said stock at the direction of said defendants. According to said application, and according to the prospectus, the capitalization of the company was to have been 5000 shares of common stock of no par value, to be sold at $50 per share, and 2500 shares of 8 per cent. cumulative preferred stock of the par value of $100 per share, which would make the total capitalization of $500,000. According to the above-stated plan, plaintiffs and other subscribers for stock in this company subscribed and paid for the same on the faith of the representations made and held out to them by the defendants, and on the faith of the organization of said company being perfected and its capitalization of $500,000 being raised by the sale of its stock; but this plan was not perfected, and the organization of the company according to the prospectus has failed and the plan aborted. It was set out in the application to the Securities Commission, as well as in the prospectus, that Dr. Lawton B. Evans, a well-known educator and author, had agreed to serve as director and editor in chief in said company, and his name was always used in connection with the company in selling its stock. The plan of having Dr. Evans connected with the company failed, and a fraud was perpetrated upon plaintiffs and other subscribers who stand in a similar position. It was stated as a fact, in the application to the Securities Commission, as well as in the prospectus, that the entire indebtedness of the Byrd Printing Company was approximately $15,000, which was to be liquidated by Mr. Byrd. It was further stated that there were no other liabilities of the Byrd Printing Company. These statements were not true, and misled those to whom stock was sold, and the representations of said facts were false and fraudulent. Defendants were the promoters in organizing said company, in selling its stock, and in capitalizing said company at $500,000 for the express purpose of operating said company in this State, and on this basis were selling to the public, and to plaintiffs in particular, shares of preferred and common stock. For the purpose of selling this stock agents were employed, as shown by a contract entered into with H. H. Anderson Jr. and F. C. Patterson, a copy of which is attached to the petition as an exhibit. The terms of this contract were unknown to plaintiffs until the plan of organization of said company had failed.

By this contract Anderson and Patterson agreed to sell for the company 1064 shares of its preferred stock at par, and 1064 of its common stock at $50 per share. Said parties agreed to sell said stock in units of one share of common and one share of preferred stock for $150, and were to be paid for such services a commission of 20 per cent. By said contract Anderson and Patterson agreed to employ agents at their own expense and build up their own selling organization, and dispose of $100,000 of said stock within ninety days from date of said contract, and to dispose of the entire balance of said stock within six months from its date. The contract provided that the stock was to be sold on the best terms obtainable, and in any event one third of the purchase-price should be secured in cash, and one half of the balance should be payable within three months, and the entire balance within six months. The commission above referred to was to be paid to Anderson and Patterson on stock subscriptions on receipt by the company of the stock subscription and cash payment. The assets and good will of the Byrd Printing Company were sold to the Byrd Publishing Company as the property of Mrs. Byrd and her husband, for stock amounting to $255,889.16; and for the good will of the business one third of that amount was taken in common and preferred stock at the instance of Mrs. Byrd and her husband. - Mrs. Byrd and her husband perpetrated a fraud on the capital of the Byrd Publishing Company, for the reason that they did not own the property and good will of the Byrd Printing Company, said property being the property of an extinct corporation which owed debts which were created previously to the charter of the Byrd Publishing Company, and for this reason the defendants had no right to sell it to the Byrd Publishing Company. Defendants did not disclose said facts at the time of the sale of stock to petitioners, nor did they disclose said facts in their prospectus or in their application to the Securities Commission for the permit to sell the additional stock, nor did they disclose said facts to the plaintiffs as purchasers of the stock for which they subscribed; and said facts were not known by petitioners until after the promotion of the projected corporation had aborted. Plaintiffs purchased their respective shares of stock in said corporation on the faith of the representations made in the prospectus and on the faith of the organization raising the $500,000 capital, and on the faith of the representations in the prospectus

that the Byrd Publishing Company owned the machinery, supplies, and assets formerly owned by Byrd Printing Company, and they paid for their said stock in cash to the duly authorized persons selling stock, and the money therefor was received by defendants, the promoters of said corporation.

The failure to capitalize said corporation at $500,000, and to perfect the organization of said corporation in accordance with the prospectus and the application to the Securities Commission, makes Mrs. Byrd and her husband, as promoters thereof, liable to these plaintiffs as subscribers for said capital stock for the entire amount of the stock purchased by them, with interest at 7 per cent. per annum. In the organization of said corporation, and in the raising of its capital by the sale of its stock in accordance with the prospectus and plan thereof, these promoters stand in a fiduciary relation to plaintiffs and all others in a similar position, and are liable to account to them for the amount of money which they invested in the stock of said company. The subscribers to said stock are entitled to receive their moneys in full before the promoters are entitled to participate in the funds of said projected corporation. The Byrd Publishing Company is insolvent; and the money which petitioners paid for the shares of stock having been dissipated by said defendants by paying the same to creditors of the Byrd Printing Company, the defendants are liable to account to plaintiffs for their moneys. Defendants, as promoters of this corporation, are liable for whatever expenses have been incurred in the organization thereof. They are liable to plaintiffs on the ground of fraud perpetrated on them, as hereinbefore set out. They owe to Downey $5250, to Kelley $1500, and to Johnston $4250, paid by them respectively for stock in this company. Petitioners bring this petition jointly, to avoid a multiplicity of suits, and because it would be expensive to litigate separately, and because they have a common interest in having adjudicated the fraud perpetrated upon them by the defendant, and for the purpose of having the defendants adjudged promoters of the projected corporation. Plaintiffs pray that the organization of the Byrd Publishing Company be decreed to have aborted, that the defendants be decreed to be promoters thereof, and that plaintiffs have judgment against them for the moneys invested by plaintiffs in the stock subscribed and paid for by them. By an amendment plaintiffs

alleged that, prior to the filing of this suit, the superior court on their application appointed a receiver for the insolvent Byrd Publishing Company, that said case is still pending, and that said receiver duly qualified and is still acting under orders of the court.

The defendants demurred to said petition, upon the grounds: (1) It fails to set forth any facts showing a cause of action against said defendants jointly or separately. (2) Misjoinder of parties plaintiff. (3) Plaintiffs seek to recover on two separate and distinct causes of action. (4) The petition shows that the plaintiffs dealt with the corporation as such in the purchase of said stock, and not with the defendants as promoters, in that they subscribed for the same after the Byrd Publishing Company had been organized, and they bought the stock from the corporation or its agents, and in dealing with the corporation as such upon the alleged representations made by the corporation or its agents; and if there was any fraud committed upon plaintiffs, it was done by the corporation. (5) It is apparent from the allegations of the petition that the organization plans of said company did not become aborted during the promotion period, but on the contrary. There were various special grounds of demurrer. The judge sustained grounds 1, 2, 5, and 6 of the general demurrer and dismissed the petition, but did not pass upon the other grounds of the general demurrer and upon the special grounds. To this judgment the plaintiffs excepted.

█ The first ground upon which the plaintiffs seek to make the defendants responsible is that they were promoters of the Byrd Publishing Company; and as such made fraudulent misrepresentations of material facts, which induced them to subscribe and pay for stock in said company, and suppressed material facts which, if they had been communicated to them, would have saved them from subscribing and paying for worthless shares in that company. The defendants, on the contrary, contend that, at the time the plaintiffs subscribed and paid for their shares in this company, the company had been fully organized and was controlled by its board of directors and officers, and that they had ceased to occupy the position of promoters of the company. So the first question for decision is whether the defendants were promoters of this corporation at the time the plaintiffs were induced to subscribe and pay for stock therein, or whether this relation of the defendants to the

company had terminated before that time. There is no doubt that Mr. and Mrs. Byrd were the promoters of the Byrd Publishing Company. The matter for determination is whether they had ceased to be promoters of the company at the time the plaintiffs were induced to take and pay for their shares therein. While ordinarily promoters cease to be such when the corporation is fully formed, and the business is turned over to directors, such is not necessarily the case. The promoters may continue to dominate the corporation, and the directors selected by them, although legally the agents of the corporation, may be but the passive puppets and tools of the promoters. Old Dominion &c. Co. *v.* Bigelow, 203 Mass. 159 (89 N. E. 193, 40 L. R. A. (N. S.) 314); Downey *v.* Finucane, 205 N. Y. 251 (98 N. E. 391, 40 L. R. A. (N. S.) 307); 14 C. J. 252, 253 (§ 283), b. To relieve promoters from liability for fraud or misrepresentations in a transaction in which they were personally interested, it is incumbent upon them to provide an independent board of directors for the company. In re Leeds & Hanley Theatres, 2 Ch. Div. 809, 87 L. T. N. S. 488. In cases where the scheme of organization gives the promoters the power of selecting the directors, who are to represent the company in a proposed purchase or other transaction, they are bound to select competent and trustworthy persons who will act honestly in the interest of the shareholders. The promoters of a corporation stand in a fiduciary relation to it and to subscribers to its stock; they are bound to make a full and fair disclosure of the facts in any transaction had with the corporation; they will not be protected by obtaining the acceptance of a contract of sale of property by the board of directors which they have created; and where they insert in the prospectus statements which would lead intending shareholders to believe that the contract of sale has been approved by independent directors, such transaction is not binding upon the corporation and upon the shareholders, and the sale to the company will be set aside and judgment given against the promoters for repayment of the purchase-money of the shares, where the proceeds of sale of such shares have been used by the promoters for discharging liens upon property belonging to another corporation controlled by the promoters, which property they proposed to sell to the corporation involved in this case. New Sombrero Phosphate Co. *v.* Erlanger, L. R. 5 Ch. Div. 73.

Promoters of a corporation are bound to the exercise of good faith towards all the shareholders, to disclose all facts relating to the property, and to select as directors competent persons who will act honestly in the interest of the shareholders; and are precluded from taking a secret advantage of other shareholders. Dickerman *v.* Northern Trust Co., 176 U. S. 181 (20 Sup. Ct. 311, 44 L. ed. 423). Where a promoter owns all the shares of a corporation, and selects as its directors persons who have no stock in the corporation, except one share each put in their names by the promoter to qualify them to act as directors, the acts of such dummy directors will be treated as the acts of the promoter, who will be held liable for any damage caused by false and fraudulent misrepresentations made to induce others to subscribe to stock in the corporation. If such directors, at the instance of ·the promoter, put forth a fraudulent prospectus, or otherwise make fraudulent representations, whereby persons are induced to become subscribers to shares of the company, or to invest in its securities,·by reason of which they sustain damages, they have, under the principles of the common law, a direct action against the promoter who has been guilty of the fraud, to recover the damages which they have thereby sustained. 14 C. J. 267 (§ 309) C. Promoters of a corporation, in the preparation of its prospectuses, are bound to consider the effect that would be produced upon an ordinary mind by the statements contained in them; and in estimating the probability of persons being misled by them, the court may take into consideration not only the facts stated but the facts suppressed. Wiser *v.* Lawler, 189 U. S. 260 (23 Sup. Ct. 24, 47 L. ed. 802). Subscribers to the stock of a corporation are entitled to know the cons as well as the pros. Gluckstein *v.* Barnes, App. Cas. 240; Hubbard *v.* Weare, 79 Iowa 678 (44 N. W. 915); Hayward *v.* Leeson, 176 Mass. 310 (57 N. E. 656, 49 L. R. A. 725); In re Leeds & Hanley Theatres, supra; Wiser *v.* Lawler, supra. Since the promoters of a corporation occupy a trust or a fiduciary relation towards persons whom they induce to join in the enterprise and subscribe for stock therein, such persons may, in case the enterprise turns out to be a bubble, resulting in injury to them individually, maintain a suit in equity against such promoters to compel them to account for funds invested in the stock of the company, which proved to be worthless by reason of the fraud and deceit perpetrated upon them by such

promoters. A bill in equity lies to recover money paid on a bubble. Colt *v.* Woolaston, 24 Eng. Rep. (Reprint) 679. A bill in equity lies to recover deposits paid by a shareholder in a joint stock company where the project is a bubble. Greene *v.* Barrett, 57 Eng. Rep. (Reprint) 495.

In this case Mrs. Byrd owned all the original capital stock of the corporation, and dominated it. She caused one share each to be placed in the names of her husband, Noel, and Mackie. She elected these persons directors of the company, and named her husband as president, Noel as vice-president, and Mackie as secretary. In these circumstances it can not be held that an independent board of directors was elected to manage the affairs of the company, and that the promoters ceased to control and dominate the company. Its officers and directors were the mere tools of Mrs. Byrd. Whatever they afterwards did in securing subscriptions to the capital stock of the company was in effect the act of Mrs. Byrd and her husband in promoting this corporation. If in so doing they issued a prospectus which contained false and fraudulent misrepresentations, and concealed material facts which should have been made known to subscribers to its stock, and thus induced others to subscribe and pay for its stock, and they were injured by such fraud and deceit, then the promoters would be liable for the damage sustained by subscribers to its stock under these circumstances.

But if not liable as promoters, the defendants, under the allegations of the petition, are liable to complainants for damages sustained by the purchase of worthless stock in the Byrd Publishing Company, which they were induced to buy by reason of false and fraudulent representations contained in the prospectus of the company offering its stock to the public, or by concealment of facts which should have been communicated to prospective purchasers of its stock. "A director of a corporation who knowingly issues or sanctions the circulation of a prospectus containing false statements of material facts, the natural tendency of which is to deceive and to induce the public to purchase the corporate stock, is liable for the damages sustained by one who, relying upon and induced by the statements, makes such a purchase." Morgan *v.* Skiddy, 62 N. Y. 319. "Promoters, officers, and directors, as well as the corporation, participating in preparing and circulating a false prospectus issued by the corporation, are liable for injurious consequences suffered by

one relying and acting thereon." Hotaling v. Leach, 214 N. Y. S. 452 (9), 458. "The directors or officers of a corporation are liable for their fraudulent acts and representations to persons who are injured thereby. They are no more immune from false representations with intent to deceive, which result in a loss to one who relied thereon, than any other individual. The fact that they are acting for the benefit of the corporation and that they did not personally receive the fruits of the transaction, or that the company is nominally the contracting party, does not relieve them from liability." *Hines* v. *Wilson,* 164 *Ga.* 888 (2 c) (139 S. E. 802). "An action will lie against a director of a company for false and fraudulent representations contained in a prospectus issued with his sanction, although the language might be susceptible of a meaning which could make it not literally untrue; and it is not necessary that the representations should have been made directly by the defendant to the plaintiff; it is enough that they are contained in a document which it meant to be circulated amongst the class of persons who are likely to be deceived by it." Clarke v. Dickson, 95 E. C. L. R. 452, 6 J. Scott N. S., 6 C. B. (N. S.) 453. So, by parity of reasoning, the dominant stockholder in a corporation, at whose instance its directors prepare and circulate a false prospectus by the corporation, will be liable for damages sustained by one relying and acting thereon in the purchase of its worthless stock. In such a case the act of the directors in issuing a fraudulent prospectus is the act of the dominant stockholder; and the latter will be liable to the subscribers to the stock of the company who have been damaged by the false and fraudulent representations contained in the prospectus.

■ It is further insisted by the defendants that the plaintiffs are estopped, for the reason that they dealt with the Byrd Publishing Company as a corporation. It is true that one who deals with a corporation as a corporation is estopped, in a suit growing out of the transaction so had, from denying the legal existence of the corporation. *Orr* v. *McLeary,* 6 *Ga. App.* 417; *Planters Bank* v. *Padgett,* 69 *Ga.* 159, 164; *Ga. So. R. Co.* v. *Mercantile Trust &c. Co.,* 94 *Ga.* 306, 314 (21 S. E. 701, 32 L. R. A. 208, 47 Am. St. R. 153); *Chappell* v. *Lowe,* 145 *Ga.* 717 (89 S. E. 777). This principle is not applicable under the facts of this case. Plaintiffs are not seeking to recover the money they paid upon the stock on the ground that this company was not properly and legally organized.

They are seeking to recover against promoters and directors of the company damages sustained by them on account of false and fraudulent representations made by such promoters and directors. They are not seeking to recover from the corporation at all, although it would be liable for damages sustained by a subscriber on account of its false and fraudulent representations.

■ It is further insisted by the defendants that no equitable relief is sought, and that the case should not be treated as an equitable proceeding. We have undertaken to show that promoters occupy a fiduciary relation towards the subscribers to the stock of a corporation which they are promoting; and when such promoters promote a bubble, an equitable action will lie against them for the injuries sustained by subscribers, on account of the fiduciary relation which they sustain towards the subscribers; but if we are wrong in this, the petition should not be dismissed for lack of equity, as it sets forth a good cause of action against the defendants for fraud and deceit. Under the uniform procedure act, a petition will not be dismissed upon demurrer because it fails to set forth an equitable cause of action, if it sets forth a cause of action good at law.

■ From the statement of facts hereinbefore set forth it seems to us clear that the petition set forth a cause of action against the defendants for fraud and deceit. It is unnecessary to repeat these facts. They speak for themselves. The petition makes a case of which the English courts denominate a bubble, for which the defendants will be held liable to the plaintiffs for the money invested by them in the shares of this corporation.

■ We do not pass upon the grounds of special demurrer, for the reason that the court below did not pass thereon. Applying the principles above ruled, the court erred in sustaining the demurrer to the petition and in dismissing the same.

*Judgment reversed. All the Justices concur.*