200 So. 197

**HOLLOWAY et al. v. OSTEOGRAF CO., Inc., et al.**

**4 Div. 178.**

Supreme Court of Alabama.

Jan. 23, 1941.

Keith & Wilkinson, of Selma, and Files Crenshaw, of Montgomery, for appellants.

Rushton, Johnston & Williams, of Montgomery, and Wilkerson & Brannen and Ewell C. Orme, all of Troy, for appellees.

Ball & Ball, of Montgomery, amici curiae.

BROWN, Justice.

The bill, filed by a minority of the stockholders of the Osteograf Company, Inc., a domestic corporation organized and incorporated at Troy in Pike County, this State, against the surviving members of a partnership consisting of O. N. Edge, H. L. J. Marshall and Charles E. Henderson, promoters of the corporation, and the personal representative and trustee of the deceased member, Henderson, the National Surety Company, the surety on the bond of the promoters, and against Edge, Marshall and Enzor, the persons constituting the board of directors of the corporation, and the Troy Bank and Trust Company alleged to have participated in the diversion and dissipation of the capital of the corporation, seeks to compel a restoration of the equivalent of said capital to the corporation and to hold the persons constituting the board of directors liable for the negligent dissipation of corporate assets. The corporation is made a party defendant to the end that the relief, if granted, may be granted to it. Gettinger et al. v. Heaney, 220 Ala. 613, 127 So. 195.

All the parties defendant, except the corporation, separately demurred to the bill for want of equity, and on sundry specific grounds. On submission on the demurrers, the court entered a decretal order sustaining some of the specific grounds of demurrer, filed by the separate defendants. Hence this appeal.

The Constitution, § 234, prohibits the issuance of the capital stock of private corporations formed in this State "except for money, labor done, or property actually received," and it has been ruled that property transferred in payment of a subscription of such capital stock must reasonably approximate the par value of the stock. Riles et al. v. Coston-Riles Lumber Co., 208 Ala. 508, 95 So. 43.

Also that these provisions of the Constitution are for the protection of the public invited to subscribe for such stock, as well as for the protection of creditors, and establish a general rule of public policy. Nelson et al. v. Darley, 239 Ala. 87, 194 So. 177.

It has also been ruled here that the acceptance of property by the corporation in payment of a subscription of stock, at the reasonable value of the property, in the absence of fraud is binding on the corporation. Riles et al. v. Coston-Riles Lumber Co., supra.

The law is also well settled that where there is affirmative misrepresentation or fraud by the promoters of a corporation against other stockholders, in consequence of which such other stockholders have been induced to purchase stock, not only the promoters, but all others who participate in such fraud or aid in carrying

out such fraudulent scheme, or knowingly share in its profits, may be held to account at the suit of such other stockholders. Riles et al. v. Coston-Riles Lumber Co., supra; Russell v. Rock Run Fuel Gas Co., 184 Pa. 102, 39 A. 21.

So, also, that a member of the board of directors cannot act as such in making contracts for the corporation in respect to matters affecting his personal pecuniary interest, and if his vote is necessary to the transaction it will be annulled at the instance of stockholders on timely application. Holcomb et al. v. Forsyth, 216 Ala. 486, 113 So. 516; Gettinger v. Heaney, supra.

Therefore, if the promoters, in the instant case, fraudulently withdrew the money paid to the corporators for their subscribed capital stock, and deposited in the defendant bank, in consideration of the sale by themselves to the corporation of property not reasonably worth the sum of money so withdrawn, and used the same to discharge their obligation to the bank, and the defendant bank with notice or knowledge of their fraudulent purpose participated in the fraud or with notice or knowledge of the fraud received the fruits thereof, they are each and all liable.

Such subsequent stockholders, on discovery of the fraud, had the right to elect to rescind their purchase and bring an action for money had and received to recover the money paid for their stock, or confirm their purchase and proceed in equity against the promoters and others participating in the fraudulent dissipation of the capital assets. King v. Livingston Manufacturing Co. et al. 192 Ala. 269, 68 So. 897; J. H. Downey et al. v. Cora Byrd, 171 Ga. 532, 156 S.E. 259, 72 A.L.R. 345; Twycross v. Grant, L. R. 2 C.P.Div. (Eng.) 469.

In King v. Livingston Manufacturing Co. et al., supra [192 Ala. 269, 68 So. 900], dealing with the question of the duties and liabilities of the directors of corporations, it was observed:

" 'The undertaking (of directors) implies a competent knowledge of the duties of the agency assumed by them, as well as a pledge that they will diligently supervise, watch over, and protect the interest of the institution committed to their care. They do not, in our judgment, undertake that they possess such a perfect knowledge of the matters and subjects that may come under their cognizance that they cannot err or be mistaken either in the wisdom or legality of the means employed by them.' Godbold v. Branch Bank, 11 Ala. 191, 199 (46 Am.Dec. 211); Smith v. Prattville Mfg. Co., 29 Ala. 503, 509; Wolfe v. Underwood, 96 Ala. 329, 333, 11 So. 344.

"Perhaps the most apt and comprehensive discussion of this subject is to be found in the case of Wallace v. Lincoln Savings Bank, 89 Tenn. 630, 652, 15 S.W. 448, 453, 24 Am.St.Rep. 625, 639. We quote from the able opinion of Lurton, J.:

"Directors, by assuming office, agree to give as much of their time and attention to the duties assumed as the proper care of the interests intrusted to them may require. If they are inattentive to these duties, if they neglect * * * meetings of the board, if they turn over the management of the business of the company to the exclusive control of other agents, thus abdicating their control, then they are guilty of gross negligence with respect to their ministerial duties; and if loss results to the corporation by breaches of trust or acts of negligence committed by those left in control, which by due care and attention on their part could have been avoided, they will be responsible to the corporation. The diligence required from them has been defined as that exercised by prudent men about their own affairs, being that degree of diligence characterized as ordinary. If a less degree of diligence is exercised, the negligence is gross, and for losses consequent he is (they are) liable. "What constitutes a proper performance of the duties of a director," says Mr. Morawetz, "is a question of fact which must be determined in each case in view of all the circumstances; the character of the company, the condition of its business, the usual methods of managing such companies, and all other relevant facts must be taken into consideration." Morawetz on Priv. Corp. § 552.'

" 'Directors can be held responsible for a loss resulting from wrongful acts or omissions of other directors or agents only provided the loss was a consequence of their own neglect of duty, either in failing to supervise the company's business with attention, or in neglecting to use proper care in the appointment of such agents.' Id. § 562.

"Mr. Freeman, in his comprehensive note to Marshall v. Farmers', etc., Bank, 85 Va.

676, 8 S.E. 586, 2 L.R.A. 534, 17 Am.St. Rep. 84, 101, concludes: 'Directors have therefore no right to commit the management of the affairs of a corporation to a cashier, president, or other officer, or to a committee of their own number, and thereafter take no steps to keep themselves informed of what is being done with the corporate assets and the property of depositors and others confided to its care; and, if they do so, and money and other property is lost through peculation, misconduct, or reckless extravagance, which reasonable care and attention on their part would have prevented, they are answerable.' "

The statute in force at the time the capital stock of the Osteograf Company, Inc., was offered for registration by the promoters, provided that "No securities shall be admitted to record in the register of qualified securities until the applicant or applicants therefor have entered into a bond for not less than one thousand dollars, nor more than one hundred thousand dollars, and in no event for more than ten per centum of the aggregate selling price of the securities to be admitted to record. The amount of said bond shall be fixed by the commission in its order admitting said securities to record. Said bond shall be payable to the state of Alabama and be conditioned upon the truthfulness of the statements set forth in the application filed with the commission and of the written evidence or other probative matter filed with the commission in connection with such application and for the faithful compliance by said applicant and his agents with the provisions of this article and of any lawful condition or requirement made by the commission in granting such application." Acts 1931, p. 789; Michie's Cu. Sup.Code, 1928, pp. 593, 594, § 9887.

This Act, which is an amendment of § 9887 of the Code, further provides: "Any original purchaser of such securities or other person injured by a breach of any condition in said bond shall have a right of action upon said bond for the amount of damages suffered thereby but such right of action shall be barred unless suit be instituted thereon within one year from the time such cause of action arises." See Michie's Supp., supra.

The Act of 1931, p. 796, was amended by Act No. 390, approved September 9, 1935, and as amended provides: "Said bond shall be in such form as the Commission shall, from time to time designate and shall be conditioned for the faithful accounting for all moneys and/or securities of another and for the payment of any judgment rendered by a court of competent jurisdiction against any such dealer and/or salesman, one or both in any action at law *or suit in equity* in Alabama based upon fraud or misrepresentation in the sale in Alabama of any such security. Any original purchaser of securities from or through any such registered dealer or salesman or other person damaged by any breach in the conditions of said bond shall have a right of action upon said bond for the damages suffered thereby. Any such cause of action shall be commenced within one year after such cause of action arose or within one year from the discovery of the fraud." General Acts 1935, p. 862. (Italics supplied.)

We are not of the opinion that the bill is without equity in so far as it seeks to compel the promoters and their alleged confederates to account in respect to the withdrawal of the capital assets from deposit and the conversion of said funds to their own use, and requiring the directors to account for funds negligently squandered. Nor does it appear from the bill that the complainants are guilty of laches or that their right of action is barred by the statute of limitations. The bill, originally filed on the first day of June, 1939, alleges that the fraud was not discovered by them until February 1, 1939, four months prior to filing the bill. Code 1923, § 8966.

Nor does it appear on the face of the bill that the claim as against the estate of Henderson and his personal representative and trustee is barred by the statute of nonclaim. Code 1923, § 5815, as amended by Gen.Acts 1931, p. 840. So the grounds of demurrer taking that point were not well taken. Soper v. Burns et al., 233 Ala. 492, 172 So. 598.

The National Surety Company is a guarantor of "the truthfulness of the statements set forth in the application filed with the commission and of the written evidence or other probative matter filed with the commission in connection with such application," and of the faithful compliance by the applicants and their agents with the provisions of the law in respect to the registration and sale of the securities registered, and of "any lawful condition or requirement made by the commission in granting such application." Acts 1931, p.

789; Michie's Cum.Supp.Code 1928, pp. 593, 594, § 9887. By entering into the bond, it stepped into the shoes of said promoters and is liable for any of their defalcation within the terms of the statute and the conditions of said bond; and it was properly joined as a defendant in the bill. The statute does not prescribe all the conditions of the bond, but only some and authorizes the commission to superimpose others. The grounds of demurrer, taking the point that the tenor and conditions of the bond and the breach thereof were not alleged, were well taken.

Grounds 15, 21, and B-2 of the demurrer filed by the Troy Bank and Trust Company, as executor and trustee, are well taken. To authorize the tracing of trust funds it is not enough to show that the trust money is to be found somewhere in the general estate of the conversioner or tort-feasor. It must be shown that the fund can be located in some particular fund or property. Hanover National Bank of New York v. Thomas, State Sup't of Banks, 217 Ala. 494, 117 So. 42.

Grounds 2 and A-10 of the demurrer filed by the "Troy Bank and Trust Company, a corporation," were well taken.

The separate demurrers of the defendants Marshall and Enzor were properly sustained on the grounds designated in the decree.

Some of the specific grounds of the separate demurrers of all the defendants being well taken, it was not error for the court to sustain them. Hammons v. Hammons, 228 Ala. 264, 153 So. 210.

The decree of the circuit court is therefore due to be affirmed. It is so ordered.

Complainants are allowed twenty days to amend the bill as they may be advised.

Affirmed.

GARDNER, C. J., and THOMAS and KNIGHT, JJ., concur.