507 So.2d 404 (1986)
Harry D. HARDY
v.
Evelyn HARDY, on behalf of MORTGAGE INVESTMENTS, INC.
84-578.
Supreme Court of Alabama.
October 3, 1986.
On Return to Remand May 15, 1987.
John Grow, Mobile, for appellant.
Don Conway, Mobile, for appellee.
PER CURIAM.
This is an appeal from a judgment entered upon a jury verdict in favor of Mortgage *405 Investments, Inc. (MII), and against Harry Hardy, arising from a stockholder's derivative action brought on behalf of MII by Evelyn Hardy.
Harry Hardy, Evelyn Hardy (Harry's sister-in-law), and A.L. Lambert were the stockholders, officers, and directors of MII. Evelyn filed a complaint on her own behalf against Harry Hardy and A.L. Lambert, alleging denial of access to corporate records and, derivatively, on behalf of MII, seeking an accounting, and claiming damages for conversion or waste of corporate property and misappropriation of corporate assets. Before the trial began, the parties agreed to have the trial court dissolve the corporation.
At trial, the court directed a verdict in favor of A.L. Lambert, so the case went to the jury only on the claims against Harry Hardy. The jury returned a verdict in favor of Harry Hardy on Evelyn Hardy's individual claim and in favor of MII on the derivative claims, and awarded MII damages of $140,000.
Harry Hardy filed a motion for J.N.O.V. or, alternatively, for a new trial. The trial court denied the motion for J.N.O.V., but ordered a new trial unless MII agreed to a reduction of the award to $100,000. Mrs. Hardy, acting on behalf of MII, consented to the remittitur. Harry Hardy appeals from the denial of his post-trial motions; and Mrs. Hardy, pursuant to Rule 59(f), A.R.Civ.P., requests this Court to reinstate the jury verdict of $140,000. We affirm as to the appeal, and remand as to the remittitur issue.
We confess to some difficulty in discerning any issue presented for our review. Appellant's brief, under "Issues Presented," sets forth four abstract legal principles (which we accept generally as correct statements of law), without specifying any adverse ruling of the trial court. A fifth "issue presented" is that the trial court "erred in submitting the case to the jury on the six-year statute of limitations." In the "Argument" section of his brief, Appellant states, with reference to the statute of limitations issue, that "there was no evidence to support any action for conversion and thus the six-year statute of limitations should not have applied. Rather, the court should have applied, if any, the one-year statute of limitations." Here, again, we are not favored with any hint of the adverse ruling complained of.
We do find, however, under the section entitled "Conclusion," this statement: "Appellant respectfully submits that the court erred in not granting [his] motion for Directed Verdict at the close of the Plaintiff's case...." Thus, pursuant to our liberal policy of not foreclosing review on the merits, despite procedural errors, we proceed to test the propriety of the trial court's denial of Appellant's motion for directed verdict on the sufficiency-of-the-evidence ground.
We approach our analysis of this "sufficiency of the evidence" issue by observing that Evelyn Hardy, individually, is not the Plaintiff and that she, individually, has not obtained a judgment against Defendant. The suit is by, and thus the judgment is on behalf of, the corporation. The corporate entity itself is the aggrieved party and is the only party that could maintain a lawsuit for waste or conversion of its assets. Galbreath v. Scott, 433 So.2d 454 (Ala. 1983).
We make these observations because Appellant's entire argument is premised upon Mrs. Hardy's role as a director; that argument is to the effect that her failure to faithfully discharge her responsibilities as a director bars her recovery. This argument is akin to a "contributory negligence" or "estoppel" theory. We disagree with the premise upon which Appellant grounds his directed verdict and J.N.O.V. motions.
This precise point is treated in Vol. 12B, W. Fletcher, Cyclopedia of the Law of Private Corporations § 5924 at 463 (perm. ed. 1984):
"A stockholder cannot, as an individual as distinguished from a representative of the corporation, sue directors or other corporate officers for mismanagement, negligence or the like, on a cause of action which belongs to the corporation. In other words, the remedial rights of minority stockholders with respect to *406 wrongs committed against the corporation by the officers and directors in the management of corporate affairs are derivative rights and any action taken by the stockholders to redress such wrongs must be for the benefit of a corporation.... Improper manipulation of funds by the controlling stockholder creates a cause of action in favor of a stockholder as an individual, as does a wrongful diversion of corporate assets."
The increased laxity with which courts have tended to treat close corporations (see O'Neal, 1 Close Corporations § 1.15 at 79 (2d ed. 1971)) has not changed the basic proposition that a corporation is a distinct entity separate from the individuals who compose it as stockholders or who manage it as directors or officers. Cohen v. Williams, 318 So.2d 279 (Ala.1975). A corporation, however, acts through the individuals who compose it. In the present case, Mrs. Hardy sued individually (presenting a claim on which the jury found against her) and sued on behalf of the corporation for wrongs committed against the corporation. The jury found that the corporation had been wronged, and awarded damages. "[A]n action may be maintained by [the] stockholders on behalf of the corporation. In such an action the corporation is the real party in interest and would be the one in whose favor a judgment would be rendered." Galbreath v. Scott, 433 So.2d at 457.
The rule is aptly stated in 19 Am.Jur. Corporations (1986): "The corporation is the real plaintiff in a derivative suit.... The cause of action belongs to the corporation and not to the stockholders individually or collectively, and the right of a stockholder to bring a derivative suit rests in the existence of a complete cause of action against the defendant in favor of the corporation." § 2251 at 154-155. "[T]he complaint and defenses are to be considered as if the corporation itself were suing the defendant." § 2251 at 154.
Therefore, Mrs. Hardy's conduct as a director does not affect the corporation's right to recover for wrongs committed against it. Appellant's "contributory negligence" defense would be appropriate in regard to Evelyn Hardy's claim against Mr. Hardy in her individual capacity, but not in her capacity as representative of the corporation, unless she participated in the wrong complained of or consented to it. See Wright and Miller, Federal Practice and Procedure § 1834, at 397-99 (1972.)
The duty of good faith on the part of an officer is owed to the corporation as an entity, distinct from the stockholders. Sellers v. Head, 261 Ala. 212, 73 So.2d 747 (1954). Directors of a corporation occupy a quasi-fiduciary relationship to the corporation and its stockholders. Johnston v. Livingston Nursing Home, Inc., 282 Ala. 309, 211 So.2d 151 (1968). Corporate officers are required to act with fidelity and in good faith, subordinating their personal interests to the interests of the corporation. Belcher v. Birmingham Trust National Bank, 348 F.Supp. 61 (N.D.Ala.1968). Thus, Harry Hardy owed the corporation certain fiduciary duties, and Evelyn Hardy is merely asserting the breach of those duties on behalf of the corporation. Her individual negligence (here, amounting to mere inattention and entrustment of the corporate affairs to Defendant) does not work an estoppel against the corporation's assertion of its rights through her as a minority stockholder.
Applying these basic principles in the context of claims and defenses here asserted, we find that the record is replete with credible evidence that Defendant converted to his own use corporate property and misappropriated corporate funds. Thus, the trial court did not err in denying his motion for a directed verdict.
Plaintiff's challenge of the trial court's remittitur order invokes our recently announced procedure for review of an order granting or denying a new trial on the ground of excessiveness of the verdict. Hammond v. City of Gadsden, 493 So.2d 1374 (Ala.1986). Accordingly, this cause is remanded to the trial court for further proceedings consistent with the remand instructions in Hammond. See, also, Harmon v. Motors Insurance Corporation, 493 So.2d 1370 (Ala.1986); and Alabama *407 Farm Bureau Mutual Casualty Insurance Company v. Griffin, 493 So.2d 1379 (Ala.1986). The court is directed to report its findings and conclusions to this Court within 28 days of the issuance of this opinion.
ON THE APPEAL, AFFIRMED; ON THE ISSUE OF REMITTITUR, REMANDED WITH INSTRUCTIONS.
TORBERT, C.J., and JONES, ALMON, ADAMS and STEAGALL, JJ., concur.
HOUSTON, J., concurs in result.
HOUSTON, Justice (concurring in result).
Mortgage Investments, Inc., a small, closely-held corporation,[1] was formed in 1954. Initially, MII had three stockholders, each of whom held one-third of the shares in the corporationSamuel Steele, Harry Hardy, and Harry Hardy's brother, Keaton Hardy. In 1957, Steele sold his shares in MII to A.L. Lambert. Eight years later, Keaton Hardy died, leaving his shares by will to his widow, Evelyn Hardy.
On May 27, 1966, Harry Hardy, Evelyn Hardy, and A.L. Lambert held a stockholders-directors meeting. At that meeting, they adopted a resolution naming Harry Hardy president of the corporation, Evelyn Hardy vice-president, and A.L. Lambert secretary-treasurer. The resolution also provided that the board of directors would consist of Harry Hardy, Evelyn Hardy, and A.L. Lambert. It further declared that the by-laws of the corporation had been lost and that new by-laws were to be drawn up.
Over the next thirteen years, Evelyn Hardy and A.L. Lambert allowed Harry Hardy to take total control over the management of the corporation. All corporate decisions were made unilaterally by Harry Hardy, without review by the rest of the board. The lost by-laws were never replaced. Corporate meetings were held infrequently and without formality. No minutes were kept of the meetings. The corporate books were not inspected until 1979, when Mrs. Hardy reviewed them just before bringing this action. Although during those thirteen years Mrs. Hardy would ask periodically "how the business was coming along," her inquiries into the affairs of the corporation went no further. Most importantly, she made no effort to inform herself regarding her duties as an officer and director of the corporation.
This Court discussed the duties and responsibilities of directors of corporations in Holloway v. Osteograf Co., 240 Ala. 507, 515-16, 200 So. 197, 204 (1941), as follows:
"`"The undertaking (of directors) implies a competent knowledge of the duties of the agency assumed by them, as well as a pledge that they will diligently supervise, watch over, and protect the interest of the institution committed to their care...."
"`....
"`Directors, by assuming office, agree to give as much of their time and attention to the duties assumed as the proper care of the interests intrusted to them may require. If they are inattentive to these duties, if they neglect * * * meetings of the board, if they turn over the management of the business of the company to the exclusive control of other agents, thus abdicating their control, then they are guilty of gross negligence with respect to their ministerial duties....

"`....
"`..."Directors have therefore no right to commit the management of the affairs of a corporation to a cashier, president, or other officer ... and thereafter take no steps to keep themselves informed of what is being done with the corporate assets...."'" (Citations omitted.) (Emphasis added.)
*408 Harry Hardy, in defendant's requested charges two and three, requested that the court charge on these duties of a director. In defendant's requested charge two he used the above cited language from Holloway v. Osteograf Co., supra. Both of these charges were denied. There is no record of Harry Hardy's having objected to the failure to give these written instructions. Rule 51, Ala.R.Civ.P., provides that: "No party may assign as error the ... failing to give a written instruction ... unless he objects thereto before the jury retires to consider the verdict, stating the matter to which he objects and the grounds of his objection." Therefore, the failure to give these charges cannot be reversible error.
Likewise, Harry Hardy orally requested that the trial court instruct on these duties of directors in the Court's oral charge; however, when the Court informed him that it would not do so, he did not object. Rule 51, Ala.R.Civ.P., provides that "No party may assign as error ... the giving of an ... incomplete, or otherwise improper oral charge unless he objects thereto before the jury retires to consider its verdict, stating the matter to which he objects and the grounds of his objection." Therefore, the failure to give this as part of the Court's oral charge cannot be reversible error.

ON RETURN TO REMAND
PER CURIAM.
The trial court's order on remand conditioning the denial of a new trial on plaintiff's acceptance of a remittitur is affirmed.
AFFIRMED.
TORBERT, C.J., and JONES, ALMON, SHORES, BEATTY, ADAMS and STEAGALL, JJ., concur.
NOTES
[1] There is no evidence in the record to indicate that Mortgage Investments, Inc., had amended its articles of incorporation pursuant to Code 1975, § 10-2A-303, so as to qualify for treatment under the special provisions for close corporations found in Code 1975, §§ 10-2A-300 through -313. Consequently, Mortgage Investments, Inc., is subject to this state's general law of corporations. Code 1975, § 10-2A-300(a). This is not to suggest, however, that the result in this case would have been different had those special provisions applied.