(95 South. 43)

### RILES et al. v. COSTON–RILES LUMBER CO. (6 Div. 538.)

(Supreme Court of Alabama.   Oct. 26, 1922.
Rehearing Denied Dec. 7, 1922.)

1. **Corporations ⬾30(2)—Promoters are fiduciaries and are liable for secret profits acquired in promotion.**

Promoters of 'a corporation occupy a fiduciary relation to it and cannot derive any advantage over other stockholders without a full and clear disclosure of the transaction, so that they are liable for secret profits which they may acquire through promoting the corporation.

2. **Corporations ⬾30(2)—Those aiding fraudulent promoters are liable to corporation for loss thereby sustained.**

Where there is affirmative misrepresentation and fraud by the promoters of a corporation against the other stockholders, not only the promoters but other persons, who with knowledge of the fraud concurred in carrying out the scheme or shared in its profits, are liable to the other stockholders for fraud.

3. **Pleading ⬾8(15)—Allegation in bill transaction was fraudulent without facts showing fraud is a conclusion.**

In an allegation that a transaction whereby stockholders who were not promoters of a corporation received $5,000 in stock for property transferred to the corporation worth not to exceed $2,000, a charge that the transaction was a fraud on the corporation was a conclusion of law.

4. **Corporations ⬾99(2)—Acceptance of property for stock of greater value is binding on corporation.**

Though Const. 1901, § 234, and Code 1907, § 3467, forbid the issuance of fictitious corporate stock, they authorize a discharge of subscription for stock by the transfer of property at a reasonable value, and, if the corporation accepts the property, the acceptance is binding on it in the absence of fraud or deception, though creditors, including innocent stockholders, may proceed individually as for an unpaid subscription, if the valuation is grossly excessive.

5. **Equity ⬾239—Demurrer does not admit conclusion pleaded in bill.**

A demurrer to a bill in equity confesses only matters of fact which are well pleaded and does not admit conclusions or inferences of law or fact.

6. **Equity ⬾117—Objection that respondents within county were not material parties can be raised by demurrer of other respondents.**

The objection that the bill was without equity as to the respondents who resided within the county where the suit was brought, so that they were not, therefore, material respondents who resided in the county within the contemplation of Code 1907, § 3093, is available by demurrer to other respondents residing in other counties.

Appeal from Circuit Court, Jefferson County; J. C. B. Gwin, Judge.

Bill by the Coston-Riles Lumber Company against I. M. Riles and others. From a decree overruling their separate demurrers, I. M. Riles, William Varner, and the Farmers' State Bank appeal. Reversed, rendered, and remanded.

The bill is filed by the Coston-Riles Lumber Company, a corporation organized under the laws of Alabama, with principal place of business in Bessemer, Jefferson county, Ala., against W. L. Coston, E. C. Coston, C. J. Donald, T. C. Donald, M. C. Thomas, O. W. Lewis, and William Waldrop, residents of Jefferson county; I. M. Riles, B. H. Oats, A. P. Mize, R. P. Prowell, and Fleetwood Rice, residents of Tuscaloosa county; William Varner, resident of Macon county; A. J. Krebs, resident of Atlanta, Ga.; the First National Bank of Tuscaloosa, with principal place of business in Tuscaloosa; and Farmers' State Bank, with principal place of business in Macon county.

The bill alleges that I. M. Riles, as a promotor, conceived, and with the co-operation and assistance of William Varner executed, the design and plan of forming complainant into a corporation, resulting in the frauds and wrongs alleged and complained of, in substance, as follows:

About January 31, 1920, Riles procured from one E. R. Alexander an option on the timber and timber rights on a large tract of land in Macon county, and at about the same time procured from William Varner a like option on lands in the same county, at prices, respectively, of $20,000 and $26,000. At that time, or soon thereafter, Riles and Varner, one or both, conceived the idea of organizing a corporation to which they would sell the timber and timber rights on the Alexander and Varner lands at a price greatly in excess of that fixed in the options. About March 15, 1920, Riles, with the knowledge and consent of Varner, went to Bessemer and proposed to W. L. Coston, T. C. Donald, C. J. Donald, O. W. Lewis, and M. C. Thomas the formation of the complainant corporation, representing to them that he had had much experience in the timber business; that he had until recently been connected with a lumber concern in Tuscaloosa county, as manager, and that he had disposed of his stock in that concern for $18,000, which he desired to put into the proposed corporation; that he had options on the timber rights on a large body of land in Macon county; that he was desirous of giving the proposed corporation and his prospective associates the benefit of such options, and would procure sales of such timber rights to the corporation at the prices and under the terms provided in his options, without any profit to himself; that he would take and pay for one-half of

the paid-up capital stock, his prospective associates to take and pay for the remaining half; and that with such funds the corporation would exercise the mentioned options.

On June 12, 1920, Riles and W. L. Coston, T. C. Donald, C. J. Donald, O. W. Lewis, and M. C. Thomas entered into an agreement to form the proposed corporation, with a capital stock of $100,000, of which $43,000 was to be paid in, provided satisfactory terms could be secured for the purchase price of the timber rights mentioned. Riles secured a satisfactory arrangement with Varner for such purchase, and thereafter, in accordance with the agreement, the corporation was formed, but with paid-in capital stock of $60,000. It is alleged that in the agreements looking to the formation of the corporation Varner was apparently not known as one of the original incorporators, but that he was to receive and did get a part of the original issue of capital stock.

Following the formation of the complainant corporation, it is alleged, Riles and Varner procured Alexander to execute a deed to the corporation to the timber rights covered by his option to Riles; and Riles also procured a deed to be executed by Varner to the corporation to the timber rights covered by his option. It is averred that, while the recited consideration in the deed from Alexander was $20,000, the real consideration paid by the corporation was $30.000; and that Riles and Varner realized from the transaction a secret profit of $10,000 at the expense of the complainant corporation. It is further averred that, while the recited consideration in the deed from Varner was $12,750 and "other and further good and valuable consideration to be paid," the real consideration was $12,750 in cash and $42,750 in notes executed by Riles, in the name of complainant, payable to Varner, and indorsed by the organizers of complainant corporation, all of the notes being delivered to Varner; that by this transaction Riles and Varner, one or both, realized a secret profit, at the expense of complainant, of $29,000; and it is averred that of the $42,750 in notes $10,000 has been paid and has been equally divided by Riles and Varner.

It is alleged that the notes so delivered to Varner were three for $10,000 each and two for $6,375 each; that Varner delivered to Riles one of the notes for $10,000 and one for $6,375, in addition to one-half of the proceeds of the note for $10,000 which was paid by the complainant.

The bill alleges that the notes delivered by Varner to Riles are now held by the First National Bank of Tuscaloosa, which is not a bona fide holder; but that said Bank had notice at the time it took the notes of the frauds and wrongs complained of, or was in possession of sufficient facts to charge it with notice of the fraud practiced on complainant and its innocent shareholders by Riles and Varner; and that the bank did not pay full value for the notes.

By the fifth paragraph of the bill it is alleged:

"That while the certificate of incorporation of complainant recites that $60,000 was paid in at its organization and on that amount it purports to have commenced business and that this amount was paid in in cash, said statement is not true, in that $5,000 of the amount credited to respondents W. L. Coston, T. C. Donald, C. J. Donald, M. C. Thomas, and O. W. Lewis, $1,000 to each, was in fact a transfer by them to complainant of a sawmill and sawmill outfit at a value fixed at $5,000, which complainant avers was a fraud on it, in that the said sawmill and sawmill outfit was not of a value in excess of $1,500 or $2,000, and complainant further avers that as a consideration for said sawmill and sawmill outfit there was issued to and is now held by said parties $1,000 of the capital stock of complainant each, which said issue of stock to said five respondents was a fraud on this complainant and was issued without proper consideration therefor."

It is further alleged that the Farmers' State Bank holds $4,500 of the capital stock of complainant as collateral security, which stock was issued to Riles without consideration and as the result of fraud; that said stock has not been transferred on the books of complainant, and that complainant has a superior lien thereon; that that bank had knowledge or notice of the fraud; that said stock is held as collateral for a note purporting to have been executed by Riles and Coston; that said bank has filed suit on the note against the complainant; and that Riles and Coston did not have authority to bind the complainant by said note.

Paragraph 10 of the bill is as follows:

"That in January, 1921, the said respondents who had control of complainant corporation issued to the respondent William Waldrop $7,200 of the capital stock of complainant, for which said sum Waldrop paid full value, which said stock is now held by said William Waldrop and of which he is a bona fide purchaser for full value; and complainant avers that the said $7,200 was turned into the treasury of complainant corporation, and that the said Riles has converted the same to his own use or else disposed of same in such manner as to render him liable to complainant therefor."

Of the stock issued to Riles it is alleged that he transferred to these respondents the following shares: To Fleetwood Rice 5 shares, to A. J. Krebs 25 shares, to B. H. Oats 25 shares, to A. P. Mize 25 shares, and to R. P. Prowell 20 shares; that neither of said transferees is a bona fide holder, each having knowledge or notice of the fraud set up; and that there was no consideration for such transfers.

It is alleged that under the pretense of putting in a sawmill and developing the timber rights mentioned, Riles padded pay rolls

by putting on the names of men who were not there, and paid himself the wages of such persons, taking from the complainant $10,000; that in making up said pay rolls Varner assisted and participated.

It is further alleged that the respondents Riles, W. L. Coston, T. C. Donald, C. J. Donald, O. W. Lewis, and M. C. Thomas, after the corporation was organized, paid into complainant $20,000, for which they issued to themselves stock, and that Riles converted said money to his own use; and that Varner so participated in the appropriation of said money as to render him liable to account therefor.

After organization of the corporation, it is alleged that Riles, in making payment of his one-half of the capital, exhibited a receipt for $10,000 which he represented he had paid to Varner on the purchase price of the mentioned timber rights; that he delivered a boiler and engine, accepted as $1,550 cash, and delivered a check, drawn on the First National Bank of Tuscaloosa, for $18,450. It is averred that the engine and boiler were paid for by Riles out of the funds of the complainant; that he did not have in the First National Bank of Tuscaloosa the amount of the checks so issued, but deposited therein $7,750 received by him from Varner as a part of the cash payment made by the complainant to Varner, and placed with the bank the note for $10,000 received by him from Varner.

It is further alleged that Riles' statement that he had owned stock in the lumber concern in Tuscaloosa and had sold the same was false.

The prayer of the bill is that Riles and Varner be required to account for all moneys received by them; that they be compelled to disclose what was done with such moneys, and that liens be declared on all property into which such moneys may be traced, and for personal money decrees against them; that certificates of stock issued to them be decreed to have been without consideration, except to the extent shown; and that, except to that extent, such certificates be required to be surrendered and canceled; that the notes given by complainant to Varner be required to be surrendered to the court and canceled in whole or in part.

It is prayed that the First National Bank of Tuscaloosa be required to surrender the note it holds for cancellation or credit by the court; that the Farmers' State Bank be required to surrender the stock it holds, the note held by it be canceled as to complainant, and prosecution of its said suit be enjoined; that the stock held by respondents Krebs, Oats, Mize, Rice, and Prowell be required to be surrendered, and complainant be decreed to have a superior lien thereon.

The further prayer of the bill is:

"That respondents W. L. Coston, T. C. Donald, C. J. Donald, M. C. Thomas, and O. W. Lewis be required by this court to surrender their stock or certificates of stock which they hold in the complainant corporation to be canceled to the extent of the difference of the real price or value of the said sawmill and sawmill outfit sold by them to the corporation in payment of stock issued to them, or that a personal money judgment and decree be entered against them for the difference between the price paid the corporation and the real and true value of said sawmill and sawmill outfit so sold by them to the complainant."

Brown & Ward, of Tuscaloosa, Hill, Hill, Whiting & Thomas, of Montgomery, Tillman, Bradley & Baldwin and John S. Stone, all of Birmingham, and A. V. Van de Graaff, of Tuscaloosa, for appellants.

The bill contains no equity as against any of the Jefferson county respondents, no cause of action on the part of complainant is stated against any of them, and complainant is not entitled to relief against any of them. The venue is mislaid. 114 Ala. 630, 21 South. 534; 116 Ala. 224, 22 South. 577, 67 Am. St. Rep. 105; 140 Ala. 377, 37 South. 237, 103 Am. St. Rep. 41; 157 Ala. 523, 48 South. 105; 176 Ala. 99, 57 South. 763; 14 C. J. 451; 5 Fletcher, Ency. Corp. 5906; Cook on Corp. (6th Ed.) 127; 98 Ala. 241, 13 South. 87; 190 Ala. 388, 67 South. 510; 203 Ala. 189, 82 South. 439; 87 Ala. 725, 6 South. 702, 6 L. R. A. 218; 123 Ala. 538, 26 South. 232; 58 Wis. 655, 17 N. W. 406, 46 Am. Rep. 667; 210 U. S. 206, 28 Sup. Ct. 634, 52 L. Ed. 1025; 102 Ala. 648, 15 South. 429, 48 Am. St. Rep. 92; 115 Ala. 238, 22 South. 109; 143 Ala. 567, 39 South. 356; 198 Ala. 579, 73 South. 927; (D. C.) 234 Fed. 798; 201 Ala. 133, 77 South. 554, L. R. A. 1918C, 839; Code 1907, § 3093. None of the respondents to the bill who reside in Jefferson county are material defendants within the venue statute. Code 1907, § 3093; 38 Ala. 17; 54 Ala. 440; 72 Ala. 344; 202 Ala. 335, 80 South. 417. The bill is without equity in so far as it seeks injunction against the Farmers' State Bank. 14 R. C. L. 405; 151 Ala. 215, 43 South. 859, 11 L. R. A. (N. S.) 581; 17 Ala. 672; 50 Ala. 5; 54 Ala. 1; 164 Ala. 317, 51 South. 348; 122 Ala. 308, 25 South. 242; 116 Ala. 120, 22 South. 262; 118 Tenn. 755, 102 S. W. 1109, 12 L. R. A. (N. S.) 881; 27 Ala. 519; 37 Ala. 688; 201 Ala. 315, 78 South. 91; 171 Ala. 593, 54 South. 881; 140 Ala. 268, 37 South. 79. The liability of a promoter is that of an agent or trustee, and a promoter, to be such, must actively assume to represent the corporation in some material capacity, in some matter looking toward its creation as a going concern. 3 Words and Phrases (Second Series) 1264; 14 C. J. 251; 1 Fletcher, Ency. Corp. 268; 73 Minn. 498, 76 N. W. 265; 96 Md. 560, 54 Atl. 254. The Jefferson county respondents were not promoters.

James J. Mayfield, of Montgomery, and Huey & Welch, of Bessemer, for appellee.

The act of the Jefferson county promoters in selling the corporation the sawmill at a fictitious and fraudulent valuation, when they were acting as trustees or agents for the corporation, was actionable as matter of law. The liability of Riles and the Bessemer promoters was the same. 178 Ala. 239, 59 South. 219, Ann. Cas. 1915B, 173; 14 C. J. 297; 227 U. S. 80, 33 Sup. Ct. 197, 57 L. Ed. 426; 7 R. C. L. 76; 154 Cal. 36, 97 Pac. 10, 18 L. R. A. (N. S.) 1106; 176 Mass. 310, 57 N. E. 656, 49 L. R. A. 725; 96 Pa. 528; 108 Va. 288, 61 S. E. 762; Alger's Law of Promoters, 4. The Jefferson county respondents were material defendants. Code 1907, § 3093.

ANDERSON, C. J. [1] The bill charges, and the facts averred show, that I. M. Riles was the promoter of the complainant corporation, and that in order to induce Coston and other subscribers to organize the complainant corporation he made certain false and fraudulent representations as to the amount of certain timber options held by him, and that the proposed corporation should receive this timber for the price as fixed by his option, when in fact and in reality he subscribed the timber and received therefor stock and other valuable consideration in excess of the price paid or called for under his option with the vendors of the timber—that Varner, one of the vendors of said timber, knew of the purpose or scheme of the said Riles to promote the corporation and to unload the options upon it at an enhanced valuation, and with a knowledge of said facts aided and abetted said Riles in the perpetration of a fraud upon the corporation and received a share of the profits obtained by said Riles as a result of the transaction. It is a well-settled principle that promoters of a corporation occupy a fiduciary relation to it and have no right to derive any advantage over other stockholders without a full and fair disclosure of the transaction, and any secret profits which they may acquire through promoting the corporation must be refunded and may be recovered in equity by the corporation or its legal representative and in many cases at law. Moore v. Warrior Coal Co., 178 Ala. 234, 59 South. 219, Ann. Cas. 1915B, 173, and authorities there cited.

[2] "II. Liability of Aiders and Abettors of Fraudulent Promoters.—If there is not only not a full and fair disclosure by a promoter in dealings with the corporation, but affirmative misrepresentation, fraud, and deceit, then not only the promoter, but other persons as well, who stand in no fiduciary relation toward the corporation or its members, but who, with knowledge of the fraud, concur with the promoter in carrying out his fraudulent scheme, will become liable to the corporation in an action for what it has lost thereby. And third persons who participate with promoters in a fraud upon subscribers for stock in a corporation will be jointly and severally liable with the promoters to such subscribers for the fraud as in other cases of joint tort-feasors. Such liability on the part of third persons participating with promoters in a fraud upon the corporation or upon subscribers for its stock exist irrespective of their motives or the degree of their culpability, and although they originally may not have been parties to the fraudulent scheme and may not have shared at all in the profits of the fraud. And a vendor of property to a corporation may as principal be liable for false and fraudulent representations made by a promoter as his agent in respect to the property in effecting the sale. But to recover against others than the promoter or promoters actually perpetrating the fraud it is necessary to show that they were participants in the fraudulent scheme either as principals or agents, or else that they participated in the proceeds of the fraud with knowledge. Persons who are not promoters, but merely sell property to the corporation, are not responsible for false representations in a prospectus issued by the promoters, although they may have knowledge of them. Nor is a vendor of property to a corporation through a promoter as his agent liable for the fraud of the promoter which is not within the scope of his employment. Where a person makes fraudulent misrepresentations to individuals to induce them to form a corporation, and to have the corporation, after its organization, enter into a contract with him, the fact that he never has any direct communication with the corporation previous to its entering into the contract will not relieve him from responsibility to it for damages resulting from his fraud." 14 C. J. p. 303; Moore v. Warrior Coal Co., 178 Ala. 234, 59 South. 219, Ann. Cas. 1915B, 173.

The bill contains equity as to Riles and Varner and the respondents banks and others who are charged to be holders with notice. Indeed, the equity of the bill as to these respondents is not seriously controverted in brief of counsel.

[3-5] The next question is: Does the bill contain equity as to Coston, Donald, C. J., Donald, T. C., Thomas and Lewis, who reside in Jefferson county, so as to give the chancery court jurisdiction, the other respondents not residing in said county? While the bill shows that Riles was a promoter, it may be questionable as to whether or not the above-mentioned respondents were, though we may concede without deciding that they were, as there is no averment that in the promotion or organization of the corporation they practiced any fraud or deception. The

only charge whatever against them is that pursuant to being deceived by Riles, they entered into a contract for the organization of a corporation wherein they agreed to subscribe $30,000, or $6,000 each, and that they subsequently paid for $5,000 of said stock with a sawmill and outfit that was not of a value in excess of $1,500 to $2,000, and that this was "a fraud on the corporation." This averment of fraud is a glaring conclusion, as there is not the slightest intimation in the bill that these parties made any false or fraudulent representations as to the quality, condition, or value of the sawmill, nor does the bill question the fact that the property was not accepted with a full knowledge of the value and condition. True, the Constitution, § 234, and section 3467 of the Code, forbid the issuance of fictitious stock, but they authorize a discharge of the subscription by the transfer of property at a reasonable value, and if the corporation accepts the same, in the absence of fraud or deception, the acceptance is binding on the corporation, though if the valuation is grossly excessive as to creditors, including innocent stockholders, they may proceed individually as for an unpaid subscription. Roman v. Dimmick, 115 Ala. 233, 22 South. 109; Elyton Land Co. v. Birmingham Warehouse Co., 92 Ala. 407, 9 South. 129, 12 L. R. A. 307, 25 Am. St. Rep. 65; Nicrosi v. Irvine, 102 Ala. 648, 15 South. 429, 48 Am. St. Rep. 92. The present bill is filed by the corporation and not the creditors. It is true, the bill avers that the transfer of the property was a fraud on the corporation, but this is a mere conclusion and the facts set forth do not support the conclusion. A demurrer to a bill in equity confesses only matters of fact which are well pleaded and not conclusions or inferences of law or fact, and when fraud is averred in general terms and no facts are alleged constituting such fraud, the court cannot consider such averments in passing on a demurrer to such bill. McCreery v. Berney National Bank, 116 Ala. 224, 22 South. 577, 67 Am. St. Rep. 105; Henley v. Rucker, ante, p. 165, 93 South. 879.

[6] The bill was without equity as to the above-named Jefferson county respondents, and they were not therefore material respondents, who resided in said county within the contemplation of section 3093 of the Code of 1907, and this point was available by demurrer to Varner and the other respondents residing in other counties. Lewis v. Elrod, 38 Ala. 17; Harwell v. Lehman, 72 Ala. 344; Ala. Pyrites Co. v. Merritt, 145 Ala. 252, 40 South. 1028; Crawford v. Walter, 202 Ala. 235, 80 South. 73.

The trial court erred in overruling the appellants' demurrer to the bill of complaint, and the decree is reversed, and one is here rendered sustaining the same, and the cause is remanded.

Reversed, rendered, and remanded.

SAYRE, GARDNER, and MILLER, JJ., concur.