6 So.2d 869

**UPCHURCH et al. v. GOODROE et al.**

**6 Div. 958.**

Supreme Court of Alabama.

March 12, 1942.

DeGraffenried & McDuffie, of Tuscaloosa, for appellants.

McQueen & McQueen, Foster, Rice, Madison & Rosenfeld, Reuben H. Wright, and Ward W. McFarland, all of Tuscaloosa, for appellees.

398

FOSTER, Justice.

This suit is in equity to obtain the benefits of an agreement for the lease with an option to purchase a textile mill with plant and machinery in Tuscaloosa County, owned by Rosenau.

Complainants, whom we will call Upchurch, claim that Goodroe, in whose name the lease and option was made with Rosenau, was acting as their agent for them as an undisclosed principal, and they seek to follow it into the possession of a corporation by the name of Cottondale Mills, Inc., to which it was assigned by Goodroe, and that it be vested in them and out of the corporation. The contract was dated December 17, 1940, to become operative January 1, 1941. The corporation was organized April 23, 1941, to take over the lease and to operate the plant. The incorporators were Goodroe, who subscribed to five hundred and ten shares of the par value of one dollar each, and paid for same by a transfer of the lease above mentioned: also Marvin Clark four hundred shares, paid for in cash $400, and Gordon D. Palmer ninety shares for $90 paid in cash.

The trial court found and decreed that Goodroe was in fact acting as agent for Upchurch, who was the equitable owner of the lease and agreement; that at the time of the organization of the corporation Goodroe was the employed representative of Upchurch, a non-resident, operating the plant for him on a salary and percentage of the profits; that Upchurch supplied all funds with which to pay the rental and for the operations and new equipment and supplies; that Goodroe perpetrated a fraud on Upchurch in assigning the contract to the corporation and having it take over the operations; that the corporation as such, and both Marvin Clark and Gordon Palmer, as well as Rosenau, had no notice of the rights of Upchurch and were acting in good faith.

It was therefore decreed that the five hundred and ten shares of stock held in the name of Goodroe, purchased by a transfer of the lease, were in equity owned by Upchurch, and the court divested the same out of Goodroe, and invested them in Upchurch. Further consequential orders were made carrying into effect such finding and decree. Upchurch appeals, and the corporation, Goodroe, Marvin Clark and Rosenau cross-assign errors.

Upchurch claims, first, that the corporation was fraudulently organized and could not become an innocent purchaser of the stock, and that instead of the five hundred and ten shares being decreed to him, the entire lease should be so decreed.

The question then is whether a corporation which was fraudulently conceived and organized by its promoter became a bona fide purchaser from such promoter of the lease with which he paid for his subscription to the capital stock. This question seems to be answered by the authorities as dependent upon whether the other incorporators had notice of the fraud of the promoter, or of the equitable right of Upchurch in the lease. The knowledge which Goodroe had, who was the president in the organization, does not impart notice to the corporation as a matter of law, where he is acting for himself and in his own interest in assigning the lease to the corporation. It is said in Frenkel v. Hudson, 82 Ala. 158, 2 So. 758, 60 Am.Rep. 736, that under such circumstances the corporation is a bona fide purchaser unless the others interested had knowledge of facts sufficient to put them on inquiry as to the existence of the equity sought to be enforced. This opinion is used as a text in 18 Corpus Juris Secundum, Corporations, § 241, p. 675, note 71; Id., Corporations, page 531, § 127. In Lea v. Iron Belt

Mercantile Co., 147 Ala. 421, 42 So. 415, 8 L.R.A.,N.S., 279, 119 Am.St.Rep. 93, the person transferring the property was said to be almost the sole owner of the corporation, and therefore it was said the general rule does not apply. To this extent only was that opinion approved in Hall & Brown Woodworking Mach. Co. v. Haley Furniture & Mfg. Co., 174 Ala. 190, 56 So. 726, L.R.A. 1918B, 924. But in the instant case Goodroe only owned fifty-one per cent. of the stock. The others paid in full in cash. The question is were they innocent.

The existence of innocent stockholders justifies corporate rights in many aspects, in relation to fraudulent promoters who may have a controlling interest. See Ex parte Brown & Co., 240 Ala. 157, 198 So. 138; Riles v. Coston-Riles Lbr. Co., 208 Ala. 508, 95 So. 43; Davis v. Las Ovas Co., 227 U.S. 80, 33 S.Ct. 197, 57 L.Ed. 426.

The trial court had the evidence given by the witnesses in open court. It was conflicting in this respect. We need not rehearse it. The finding of the court should be sustained on well known principles.

The lease and option agreement contained a clause whereby it was not assignable without the consent of Rosenau. He did consent in writing to the assignment to the corporation.

Respondents contend that even though Upchurch was entitled to an equitable assignment of the lease as between him and Goodroe and the corporation, Rosenau did not know of Upchurch as an undisclosed principal equitably entitled to the lease, and did not consent to the assignment to Upchurch, and does not now consent. The principle of law is well supported. See 2 Amer.Jur. 322, § 412; Birmingham Matinee Club v. McCarty, 152 Ala. 571, 44 So. 642, 13 L.R.A.,N.S., 156, 15 Ann.Cas. 237; Overton v. Harrison, 207 Ala. 590, 93 So. 564.

But this principle would have no application to relief in which the assignment to the corporation is sustained as an innocent purchaser when Rosenau agreed to that assignment without condition expressed in his written consent. The decree does not undertake to vacate the assignment but to enforce a trust on the property into which the lease is traced. Hall v. Hall, 241 Ala. 397, 2 So.2d 908(14); Culver v. Guyer, 129 Ala. 602, 29 So. 779; Small v. Hockin-smith, 158 Ala. 234, 48 So. 541; Smith v. Perry, 56 Ala. 266.

Rosenau is not in position to resist the right of complainant as decreed by the trial court though he may not have known of complainant's equity when he consented to the assignment to the corporation. This assignment was not set aside by the decree. It remains where he agreed it should be. He cannot control ownership of the corporate stock and his ignorance as to the respective claims of others is immaterial. So that whether he had notice of complainant's equity as now enforced, or did not know of it, is immaterial, since the lease is not here held to be the property of Upchurch, but only the stock into which the lease was traced.

Respondents also contend that to enforce rights as decreed by the trial court, gives effect to a parol trust in land, in that the lease created an interest in land which is within the statute of frauds, and therefore the creation of a trust in such a lease is also within the statute of frauds. Since the lease was to extend more than a year from its date, and included an option to purchase, we assume it would be conceded that the statute does apply. Code of 1940, Title 20, § 3(5).

But this principle has no application to a resulting trust. That right is not dependent upon contract, but the trust is raised by a doctrine of equity, and arises, broadly speaking, when the consideration of the purchase is paid by one party and the title taken in another. Butts v. Cooper, 152 Ala. 375(5), 44 So. 616.

When the purchase price consists of a cash payment and others which are payable in deferred installments, the right to resulting trust is said to depend upon the payment of that which was immediately payable and an obligation to meet those which are deferred as they mature. Owens & Co. v. Blanks, 225 Ala. 566, 144 So. 35; Bibb v. Hunter, 79 Ala. 351. In the instant case, the interest presently acquired by the lease and option agreement was a tenancy, and the purchase price was $100 a month as the rental price. This contract was to become operative January 1, 1941, after its execution December 17, 1940. But the $100 to be paid January 1, 1941, was paid at once after the execution of the contract in the following manner: Upchurch gave his check to Goodroe for $500, and he opened an account in his own

name in the bank and gave his check on that fund for $100, pursuant to an agreement between him and Upchurch. Goodroe had no other funds in that account.

■ According to the contention of Upchurch, which the trial court properly sustained, we think, the lease contract was his and was taken for him exclusively, but in the name of Goodroe for reasons to which we will later refer. As between those two, Upchurch was the party bound to make the stipulated deferred payments. He did make them by sending the money for that and other purposes to Goodroe to do so for him, until this controversy arose. Since then he has been paying the sum each month into court for Rosenau. We think the decree could be sustained on the principle of a resulting trust.

But we also think it can be sustained on the principle that there was such partial performance as to satisfy the statute of frauds, to which we have referred for the reasons which we will now discuss. The duplicate lease and option contract signed by the parties, which was turned over to Goodroe, was immediately sent by him to Upchurch, but without an assignment, though we think in recognition of his ownership. When Goodroe took possession of the property, he did not act for himself but for Upchurch. If Goodroe had taken the lease and had gone into possession under it on his own account, and in his own right, and had then undertaken to sell it to Upchurch without a writing complying with the statute, but had then and there transferred the nature of his possession from one on his own account to one as the agent and employee of Upchurch, and had delivered possession to him only by doing so, the question of whether that would be a delivery of possession as a feature of the part performance necessary to comply with the statute is not here presented, and we do not after a limited investigation find an authority on that subject. But if we assume that it would not be a sufficient compliance with the statutory requirement of delivery of possession, that is not this case.

■ There is no prohibition against parol evidence that when Goodroe first went into possession it was not on his own account but was only as agent and representative for Upchurch. So that from its inception his possession was that of Upchurch. The evidence fully supports the finding that this was the true status of his entry into possession. So that Goodroe put Upchurch into possession by going into it himself as the agent and employee of Upchurch, who has paid part of the purchase price, to-wit, the rent installments. Having thus taken possession for Upchurch, and as his agent and employee, Goodroe is estopped to deny the title and right of Upchurch. The assignment of a leasehold estate is within the part performance clause of the statute of frauds. Code of 1940, Title 20, § 3(5); Burford v. Tucker, 234 Ala. 503, 175 So. 548.

So that the court was right, we think, in holding that as against Goodroe, Upchurch has the equitable right to the benefits of the lease and option contract as though he had been named as lessee. Also that since Clark and Palmer were ignorant of his rights and were substantial stockholders, the corporation itself must be treated as an innocent purchaser of the contract in consideration of the issuance of the five hundred and ten shares of its stock; also that Resenau, assuming his want of notice, cannot complain of the ownership of the lease by the corporation, since he consented in writing without condition as to the personnel of the stockholders.

Appellees also contend that Upchurch came into court with unclean hands and therefore cannot have any relief as prayed for. In support of this contention, appellees quote from the testimony of Upchurch on page 168 of the record, as follows:

"I did not want it in my name because I had just asked my banker, the Trust Company of Georgia, who factors our business, who has been nice to us,—I did not want it to know we were branching out as fast as we were, because they had given us backing to finance the Banning mill,—that is my firm of C. L. Upchurch & Sons,—that is the unclean hands stuff they have been talking about. If I had asked him, he would probably not have wanted me to branch out like that, as I have found bankers do, and it has proved profitable,—but I could not risk that.

"Q. Did you tell your banker about it? A. Yes sir. I went in one time and he said 'shake out any tricks you have up your sleeves.'"

The evidence also shows that for about three months, Upchurch used other means to prevent his banker from knowing of

this business venture. But none of it indicates a purpose to defraud the banker, but rather a purpose to prevent the banker from stopping him in this new enterprise. Upchurch had a textile plant in Banning, Georgia, and also owned a corporation there which was engaged in' the business of buying and selling textile machinery. Goodroe had been employed by the corporation for four years and had no financial standing, and his father was employed in the cotton mill. The evidence shows that his banker was financing those operations, and he was fearful that he would be displeased with the new enterprise. But about the first of April he explained it all to the banker, and he made an agreement to finance Upchurch in this operation.

■ As we pointed out in the case of Van Antwerp v. Van Antwerp, 5 So.2d 73(19), that is not the sort of intent which will soil the hands of complainant as to deny him relief in equity. We there discussed the nature of the wrongful purpose which is necessary to make one's hand unclean. See 19 Amer.Jur. 329, § 476, p. 332, § 479.

The cross-assignments of error are controlled by the principles of law and facts found which we have discussed.

The result is that we agree with the court in his findings of fact, interpretation of law, its application to the facts as found, and the essential features of the relief granted.

Upon filing the original bill, the circuit judge ordered the issuance of a temporary injunction directed to Goodroe, to the corporation, Cottondale Mills, Inc., and to Clark and Palmer, enjoining them from interfering with Upchurch in the operation of the textile mill in question until the further orders of the court.

In the final decree on that subject, it is ordered: "That the temporary injunction issued against respondent Cottondale Mills, Inc., a corporation, continue in full force and effect until another director and president of Cottondale Mills, Inc., a corporation, are elected and chosen. When said director and president of Cottondale Mills, Inc., a corporation, have been elected or chosen in manner and form provided by law, it is the order, judgment and decree of the court that said temporary injunction heretofore issued against the respondent Cottondale Mills, Inc., a corporation, shall stand dissolved."

■ Pending the appeal to this Court, the temporary injunction was continued in force by order of the Chief Justice. In making the order which we have copied above, the court was only undertaking to give Upchurch the benefit of the right decreed him, and relieve him of the burden of the fraud of Goodroe in the creation of the corporation, which incidentally affects the rights of the directors named in the articles of incorporation. The other two stockholders who are the sole remaining directors, having a minority interest, should not have the privilege of ousting Upchurch, now the majority stockholder by electing some other president and operating manager, until there shall be a further meeting of the stockholders. They are holding such office under a fraudulent set up, though they are themselves innocent, and therefore their election was illegal insofar as Upchurch is concerned. And since this question arises incidentally in this case, the court of equity has the power here decreed. Moses v. Tompkins, 84 Ala. 613, 4 So. 763; Nathan v. Tompkins, 82 Ala. 437, 2 So. 747. The fraud of Goodroe in creating the corporation and thereby naming the directors is also justification for such relief. 13 Amer.Jur. 544; 19 Corpus Juris Secundum, Corporations, p. 74, § 738(b).

■ In pursuance to that authority, we will continue the injunction until there shall be a meeting of the stockholders, which the register of the circuit court shall forthwith call for the purpose of electing directors for the ensuing year. The directors shall then immediately elect the officers provided for by the charter and by-laws of the corporation. The register shall then put them in possession of the property for the purpose of operating it under the authority of the charter. The temporary injunction shall remain in effect until the foregoing proceedings are had and conducted, and it shall then be permanent so as to prohibit all parties to this cause from interfering with the operations thus set in motion until the further orders of the circuit court. Jurisdiction of this cause is retained in the circuit court for the purpose of making its decree, as here modified, effectual for such supplementary relief as may be needed. And it is modified to the extent above indicated.

The cost of appeal in this Court and of the circuit court is taxed as follows: one-third to appellants, two-thirds to Goodroe and the corporation of Cottondale Mills, Inc.

As modified, the decree is affirmed and the cause remanded.

GARDNER, C. J., and THOMAS and BROWN, JJ., concur.