**IDEAL STRUCTURES CORP., a corporation, Plaintiff,**

v.

**LEVINE HUNTSVILLE DEVELOPMENT CORPORATION, a corporation, et al., Defendants.**

Civ. A. No. 65–498.

United States District Court
N. D. Alabama,
Northeastern Division.

Feb. 16, 1966.

J. Robert Miller, Culver & Miller, Huntsville, Ala., for plaintiff.

Ernest L. Potter, Jr., Bell, Richardson, Cleary, McLain & Tucker, Huntsville, Ala., for defendant.

LYNNE, Chief Judge.

This is an action primarily seeking specific performance of a joint venture agreement allegedly entered into between plaintiff and defendant. With any claim for damages for breach of an enforceable express or implied contract, the court is not presently concerned. Defendant has filed a motion for partial summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure on the grounds that the alleged joint venture agreement is void under the statute of frauds. For the purpose of this motion, the following are the relevant facts.

Plaintiff, Ideal Structures Corp., is a corporation organized under the laws of Delaware. It is a wholly-owned subsidiary of Transcontinental Investing Corporation (TIC), a corporation which has extensive experience in the financing and building of real estate projects. Defendant, Levine Huntsville Development Corporation, is an Alabama corporation presently engaged in the development of a large shopping center in Huntsville, Alabama, which is to be known as Madison Mall Shopping Center (the mall).

In the complaint and in affidavits submitted by the plaintiff the following facts are alleged:

(1) In February, 1965, defendant was engaged in the organization, development, and construction of the mall, which upon completion was to occupy approximately forty-four acres. At that time, the defendant did not own any of this acreage; it had, however, entered into long-term ground leases with the owners of about forty acres. A number of subleases with so-called major national tenants had been signed, and these tenants were to begin renting upon completion of the mall. Thus, the primary assets of the defendant were long-term land leases and subleases of building space to be constructed.

(2) In the latter part of February, 1965, the defendant approached the plaintiff and solicited its services for the purpose of securing financial aid for the development of the mall. At that time, the mall was still in the early stages of development, and the defendant needed financial aid to continue its gradual growth. After lengthy negotiations which took place in the State of New York, the plaintiff and the defendant entered into a joint venture agreement whereby the defendant assigned its interest in the existing ground leases and subleases to the joint venture. Profits and losses of the venture were to be shared equally by the plaintiff and defendant. In return for receiving a one-half interest in the assets of the mall, the plaintiff was to perform the following services:

(a) The plaintiff was to obtain a loan commitment of $1,500,000 from the Israel Discount Bank Ltd. in New York, and

(b) The plaintiff was to obtain a construction loan commitment of $6,100,000.

The plaintiff also agreed that the joint venture was to pay Lawrence E. Levine, the president of the defendant, a sum of money not exceeding $150,000 for services rendered and to be rendered.

(3) With respect to performance of these services, the plaintiff obtained a loan commitment of $2,000,000 on May 4, 1965, from the Israel Discount Bank Ltd. of New York. The loan commitment became effective on May 14, 1965, when it was accepted by the defendant and plaintiff, through their respective presidents, as members of a joint venture having the name of Huntsville Associates. The commitment was secured by, among other things, the unconditional guaranty of payment by the plaintiff's parent, TIC. The plaintiff also obtained on behalf of the joint venture a loan commitment of $6,100,000 from the Chase Manhattan Bank of New York. The commitment letter dated May 18, 1965, refers to a joint venture consisting of the defendant and plaintiff. The commitment was accepted by the plaintiff's parent, TIC.

(4) In addition to the services performed above, plaintff's attorneys negotiated and secured amendments to some of the defendant's ground leases to facilitate the securing of financial aid for the mall. Plaintiff also fulfilled the terms and conditions of a sales contract whereby Huntsville Nursing Home, Inc. had agreed to sell to defendant a certain tract of land that was a part of the shopping center complex, by advancing the sum of $81,924.54 to the defendant to purchase the land. This advancement was pursuant to the provisions of a letter agreement dated May 13, 1965, signed by the presidents of the defendant and plaintiff. In accordance with the letter agreement, after the money was paid to the seller, a deed was issued naming defendant as grantee. This deed was recorded and immediately turned over to the plaintiff. Plaintiff agreed not to record the deed for forty-five days. Within that period of time the defendant had the option to repurchase the property by paying the original sum plus interest at eight per cent. The defendant did, in fact, exercise such an option, and the plaintiff acquiesced in such a demand. Nevertheless, the plaintiff requested that the property be conveyed to the joint

venture. The defendant did not comply with this request.

(5) The loan from the Israel Discount Bank was conditioned upon the issuance of title insurance. Lawyers Title Insurance Corp., the title company, would not insure title against mechanics' liens without a payment and performance bond from the general contractor. The defendant attempted to make arrangements for bonding for its general contractor but was unable to do so. Thereafter, on May 25, 1965, the plaintiff's parent, TIC, guaranteed the title company that all materialmen and laborers would be paid. To compensate for this additional risk, the plaintiff and defendant agreed that the original division of profits on the joint venture should be changed. Accordingly, the plaintiff's share was increased sixteen per cent so that the plaintiff would receive sixty-six per cent of the profits and the defendant thirty-four per cent. This also meant that the plaintiff's interest in the leases would be sixty-six per cent and the defendant's, thirty-four per cent.

(6) That part of the joint venture agreement in which the plaintiff was to receive a fifty per cent interest in the assets of the mall was an oral agreement. That part of the joint venture agreement in which the plaintiff's interest was to be increased to sixty-six per cent was an oral agreement.

The foregoing subparagraphs represent a brief summation of the relevant facts alleged by the plaintiff. For the purpose of this motion for partial summary judgment, the defendant admits these facts. More specifically, it admits the existence of the oral agreement and the performance of certain acts on the part of the plaintiff in pursuance of the oral agreement. The defendant, however, contends that the alleged oral agreement is void under the applicable statute of

frauds, and that the defendant, therefore, is entitled to judgment as a matter of law.

Since the transactions in this case are related to two jurisdictions, New York and Alabama, it is necessary first to determine the law to be applied by this court. Thereafter, the court will proceed to the question of whether the applicable statute of frauds bars a recovery.

### THE APPLICABLE LAW

In diversity of citizenship cases, federal courts are governed by the conflict of laws rules of the courts of the state in which they sit. Klaxon Co. v. Stentor Electric Mfg. Co., Inc., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). The general conflict rule that the Alabama courts have applied in determining the validity of a contract is that,

"[T]he nature, obligation, validity and interpretation of a contract are according to the laws of the state where made, or where performance begins, unless it is apparent that the parties manifest a mutual intention to the contrary, or unless it is to be performed in some other place, in which case the law of the other place and of performance will govern."

J. R. Watkins Co. v. Hill, 214 Ala. 507, 509, 108 So. 244, 245 (1926). This also appears to be the rule that the courts have adopted in considering the validity of a contract involving a conveyance of an interest in land. See Coral Gables, Inc. v. Patterson, 236 Ala. 201, 181 So. 236 (1938), Swink's Adm'r v. Dechard, 41 Ala. 258 (1867).

Nevertheless, the last time a case arose in Alabama which involved the application of this rule was in 1955. See New Hampshire Fire Ins. Co. v. Curtis, 264 Ala. 137, 142, 85 So.2d 441, 446 (1955) (per curiam) (dictum).[1] At that time,

---

1. This case involves a contract for the sale of personal property. The dictum of the court that the "law of place" governs the contract will not be the law of this state on January 1, 1967 when the Uniform Commercial Code becomes effective. See text, infra.

It appears that the last time the Supreme Court actually "held" this rule to be the law in Alabama was in 1926 in the case of J. R. Watkins v. Hill, 214 Ala. 507, 509, 108 So. 244, 245 (1926).

the "place of contracting" conflict rule was generally followed by all the states. Moreover, the Restatement of Conflict of Laws gave recognition to the correctness of the rule. Restatement, Conflict of Laws §§ 332, 334 (1934) (place of contracting determines the validity of contract and formalities for contracting), Restatement, Conflict of Laws § 340 (1934) (place of contracting determines the validity of promise to convey land).

In recent years, however, the principle that the law of the place of contracting must govern has been widely criticized.[2] For as one might expect, it frequently happens that the place of making the contract is merely fortuitous. Under these circumstances, the mechanical application of such a rule gives recognition to the law of a state that has no real interest in the subject matter of or the parties to the contract. For these reasons, several courts have recently abandoned the rigidity of the rule of *lex loci contractus* in favor of a more flexible choice of law rule.[3] The rule that these courts have adopted places emphasis upon the law of the state which has the most significant relationship with the matter in dispute.[4]

The tentative draft of the Restatement has espoused the most significant relationship theory in determining the validity of contracts in general.[5] It has also followed this approach with regard to the validity of a contract for the sale or lease of an interest in land. However, concerning this particular type of contract, the tentative draft adopts the view that the place where the land is situated is the most important contact in determing what state law governs the validity of the contract. Accordingly, section 346e provides as follows:

"(1) Except as stated in Subsection (2), the validity of a contract and the rights created thereby for the sale or lease of an interest in an immovable are determined, in the absence of an effective choice of law by the parties and except as to minute details of performance, by the local law of the state where the immovable is situated.

"(2) If the contacts which the contract has with another state are sufficient to establish a more significant relationship between the contract and the other state, the local law of the other state will govern."

In this instance, the State of Alabama has a more significant relationship to this case than the State of New York. First, the land upon which the mall is being built is located in Alabama. Secondly, the plaintiff admittedly performed part of the contract in Alabama. Third-

---

2. E.g., Goodrich, Handbook of the Conflict of Laws 200–02 (4th ed. 1964). Actually, the "law of place" rule has been under attack for many years. See Cook, 'Contracts' and the Conflict of Laws, 31 Ill.L.Rev. 143 (1936), Lorenzen, Validity and Effects of Contracts in the Conflict of Laws, 30 Yale L.J. 565, 655 (1921).

3. See W. H. Barber Co. v. Hughes, 223 Ind. 570, 63 N.E.2d 417 (1945); Auten v. Auten, 308 N.Y. 155, 124 N.E.2d 99, 50 A.L.R.2d 246 (1954); Lilienthal v. Kaufman, 239 Or. 1, 395 P.2d 543 (1964); Boston Law Book Co. v. Hathorn, 119 Vt. 416, 127 A.2d 120 (1956); In re Knippel's Estate, 7 Wis.2d 335, 96 N.W. 2d 514 (1959); Kievit v. Loyal Protective Life Ins. Co., 34 N.J. 475, 170 A.2d 22 (1961) (dictum); Confederation Life Ass'n v. Ugalde, 151 So.2d 315 (Fla.Ct. App.1963) (dictum). For a general discussion of the trend toward a more liberal rule see Harrison, Recent Trends in the Field of Conflict of Laws, 15 Ala. L.Rev. 1, 16 (1962).

4. The merit of this approach is that the place having the most interest in the problem is given control over the legal issues arising out of the factual situation. Auten v. Auten, supra, note 3, 308 N.Y. at 161, 124 N.E.2d at 102.

5. Restatement (Second), Conflict of Laws § 332 (Tent. Draft No. 6, 1960) provides in part: "(1) The validity of a contract is determined by the local law of the state with which the contract has its most significant relationship * * *." Restatement (Second), Conflict of Laws § 334 (Tent. Draft No. 6, 1960) provides: "The formalities required to make a contract are determined by the law selected by the application of the rules of §§ 332–332b [which is the law of the state with the most significant relationship]."

ly, the defendant is an Alabama corporation. The only contacts that the State of New York has had with the alleged oral contract are that (1) the contract was made in New York, and (2) part of the contract was performed by the plaintiff in New York.

As stated above, Alabama does not have a choice of law rule in the contracts area based on the most significant relationship. However, its Legislature recently enacted such a precept with respect to contracts for the sale of personal property when it passed the Uniform Commercial Code. Section 1–105(1) of Act 549, Alabama Regular Session Laws 1965,[6] provides as follows:

"Except as provided hereafter in this section, when a transaction bears a reasonable relation to this state and also to another state or nation the parties may agree that the law either of this state or of such other state or nation shall govern their rights and duties. Failing such agreement this Act applies to transactions bearing an appropriate relation to this state."

After considering the trend of decisions abandoning the "place of contracting" rule, the present approach of the Restatement, and the adoption of the significant relationship canon in the area of personal property by the Alabama Legislature, this court concludes that the courts of Alabama would apply the law of Alabama to the issues presented in this case and precisely holds that the law of Alabama is governing herein.[7] This includes not only the general law of Alabama, but also the Alabama statute of frauds.[8]

## APPLICATION OF STATUTE OF FRAUDS

For the purposes of this motion, defendant acknowledges the existence of its oral promise to convey sixty-six per cent of its assets to the joint venture. However, since its assets consist solely of long-term ground leases and subleases, defendant insists that the promise is void under the Alabama statute of frauds.

To resolve this issue, it is necessary first to determine whether the Alabama statute of frauds applies to a leasehold interest in land.[9] It is to be noted

6. This act becomes effective on January 1, 1967.

7. There is no Erie [Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188] obligation to follow the prior decision of a state supreme court where there is some assurance that the court would now decide otherwise. See Meredith v. City of Winter Haven, 320 U.S. 228, 64 S.Ct. 7, 88 L.Ed. 9 (1943); cf. West v. American Tel. & Tel. Co., 311 U.S. 223, 61 S.Ct. 179, 85 L.Ed. 139 (1940); Shelp v. National Surety, 333 F. 2d 431, 438–39 (5th Cir. 1964).

Analogous cases in which federal courts have applied the choice of law rule that they thought the state would now apply are Watts v. Pioneer Corn Co., 342 F. 2d 617 (7th Cir. 1965) (application of significant relationship rule in a tort case) and Fahs v. Martin, 224 F.2d 387, 399 (5th Cir. 1955) (alternative holding) (application of significant relationship rule in a usury case).

8. The application of the statute of frauds of Alabama is in keeping with the rules of the tentative draft of Restatement. Section 599a of the Restatement (Sec-

ond), Conflict of Laws (Tent. Draft No. 11, 1965) provides: "Whether a contract must be in writing, or evidenced by a writing, in order to be enforceable is determined by the law selected by the application of rules of §§ 332–332b [the law of the state with most significant relationship]." Section 334 of the tentative draft states substantially the same rule. See note 5, supra. These rules produce a desired result, for the applicability of the statute of frauds will be determined by the law of the same state that determines the validity of the contract.

9. Ala.Code, tit. 20, § 3 (1940) (Recomp. 1958) provides in part:

"In the following cases, every agreement is void, unless such agreement, or some note or memorandum thereof, expressing the consideration, is in writing, and subscribed by the party to be charged therewith, or some other person by him thereunto lawfully authorized in writing:

\* \* \* \* \*

"(5) Every contract for the sale of lands, tenements, or hereditaments, or

that the act does not expressly provide that such interests in land are within the scope of the act. However, the exception in the statute with respect to "leases for a term not longer than one year" clearly indicates that the act was designed to apply to leases for a period longer than a year. Moreover, the courts of Alabama have repeatedly upheld the application of the statute to leases longer than a year. See, e. g., Hackney v. Griffin, 244 Ala. 360, 13 So.2d 772 (1943). This court, therefore, concludes that the Alabama act does encompass long-term leases and subleases.

■ The question that next arises is whether the act also applies to an assignment of an interest in a leasehold estate. There are no Alabama cases which explicitly hold that the statute of frauds applies to a conveyance or assignment of a leasehold estate. Nevertheless, the Supreme Court of Alabama has, by implication, recognized such a principle. See Upchurch v. Goodroe, 242 Ala. 395, 6 So. 2d 869 (1942), Burford v. Tucker, 234 Ala. 503, 175 So. 548 (1937). In those cases it was contended that an assignment of a leasehold estate was void under the statute of frauds. The court, however, held that the statute was inapplicable as a result of part performance. Im-

plicit in such a holding is the inference that an assignment of a leasehold estate is within the scope of the act. Furthermore, since a lease of land is within the statute, it is only reasonable to conclude that an assignment of a lease is within the reach of the statute. Any construction to the contrary would open the door to the evils the statute seeks to avoid. The court, therefore, holds that an assignment of a lease, which is itself subject to Alabama statute of frauds, is also within the statute of frauds.

■ In the instant case, the defendant orally promised to convey its interests in the ground leases and subleases to the joint venture. After the conveyance the plaintiff would have a sixty-six per cent interest in the leases, and the rights thereunder, and the defendant a thirty-four per cent interest. Considering these facts with regard to the law discussed above, it is clear that the alleged agreement is within the statute of frauds and therefore void.

■ Plaintiff, however, seeks to avoid the application of the statute on the grounds that there was sufficient part performance and that the statute of frauds does not apply to a joint venture agreement.[10] Alternatively, the plaintiff

---

of any interest therein, except leases for a term not longer than one year, unless the purchase money, or a portion thereof be paid, and the purchaser be put in possession of the land by the seller."

10. The plaintiff attached to the complaint the following exhibits:

(a) A loan commitment letter for $2,000,000, dated May 4, 1964, from Israel Discount Bank Ltd. to Huntsville Associates, a joint venture consisting of Ideal Structures Corporation and Levine Huntsville Development Corporation;

(b) A loan commitment letter for $6,100,000, dated May 18, 1965, from Chase Manhattan Bank to TIC and Huntsville Associates, a joint venture consisting of Ideal Structures Corporation and Levine Huntsville Development Corporation;

(c) A deed conveying a tract of land known as the Huntsville Nursing Home Tract from Levine Huntsville Development Corporation to Ideal Structures Corporation; and

(d) An application of the joint venture Huntsville Associates to open a checking account with Chase Manhattan Bank.

However, it did not contend in its brief that these exhibits, or any portion thereof, constituted notes or memoranda that met the requirements of the Alabama statute of frauds. This court, nevertheless, did consider this possibility. Borden v. Case, 270 Ala. 293, 118 So.2d 751, 81 A.L.R.2d 982 (1960) sets forth the essential elements that must be present in a note or memorandum to avert the bar of the statute. After considering these requirements, this court finds that the exhibits fail to obviate the statute because there is no reference in any of them to the promise of the defendant to

argues that the agreement it seeks to enforce is not the joint venture agreement per se; rather, it is the oral promise of the defendant to reduce to writing the alleged joint venture agreement.

First, with respect to the contention that there was sufficient part performance, the statute specifically provides that the "purchase money, or a portion thereof be paid, and the purchaser be put in possession of the land by the seller" to effect a part performance. Ala. Code, tit. 20, § 3(5) (1940) (Recomp. 1958). In its brief, the plaintiff maintains that the taking of the deed to the Huntsville Nursing Home tract is in fact the taking of possession of that tract of land. Then, citing Tillis v. Folmar, 145 Ala. 176, 39 So. 913 (1906), it asserts that this possession of a portion of the land upon which the mall is being built is the equivalent of the possession of all the land.

 The plaintiff's argument is ingenuous, but it fails upon an examination of the Alabama cases. For the law clearly indicates that the possession of the purchaser (1) must be physical possession of the land and (2) must refer exclusively to the contract sought to be enforced. In Quinlivan v. Quinlivan, 269 Ala. 642, 645, 114 So.2d 838, 840 (1959), the Alabama Supreme Court set forth the following general rules applicable to part performance of oral contracts:

> "Our decisions are to the effect that the possession mentioned in Tit. 20, § 3(5), must be of a notorious and exclusive character to bring the case within the exception of the statute [cases cited]."

Quoting, then from Gibson v. Bryant, 267 Ala. 97, 100 So.2d 32 (1958), and Formby v. Williams, 203 Ala. 14, 81 So. 682 (1919), the court stated that,

> "The acts of part performance must refer exclusively to the contract sought to be enforced and be such as would not be done but for the latter. * * * That is to say,

acts of part performance cannot be explained consistently with any other contract than the one alleged.
* * * * "

The possession of the plaintiff was neither open nor notorious, for it never physically occupied the land. Moreover, even assuming *arguendo* that it had possession within the meaning of the statute, such possession does not refer exclusively to the alleged agreement of the defendant to convey its assets to the joint venture under which the plaintiff would receive sixty-six per cent of the assets.

 The plaintiff next insists that the Alabama statute of frauds does not apply to a joint venture agreement. In support of its position, plaintiff cites the case of Hunt v. Hammonds, 257 Ala. 586, 60 So.2d 355 (1952). In that case, the plaintiff alleged an oral agreement with the defendant whereby (a) plaintiff was to furnish approximately eight acres of land upon which the defendants were to erect a drive-in theater, (b) plaintiff and defendants were to erect an adjoining cafe of which plaintiff was to be the manager at a stipulated weekly salary and was to receive a portion of the proceeds, and (c) defendants were to furnish the money to build a place of business, and plaintiff was to furnish the land and be the manager of the business. In holding that the alleged oral agreement was outside the statute of frauds, the Supreme Court of Alabama stated as follows:

> "With respect to the statute of frauds, we may assume for the sake of argument that the averments of the complaint, especially count 2, show a verbal contract rather than a written one. But the alleged contract is not for the sale of an interest in land. Section 3(5), Title 20, Statute of Frauds, Code. The legal effect of the contract is to enter into a joint adventure, to which plaintiff was to supply the use of land on

convey its assets to a joint venture under which the plaintiff would receive sixty-

six percent of the assets and the defendant thirty-four per cent.

which defendants, at their own expense, were to erect certain improvements from which profits were in contemplation. Saunders v. McDonough, 191 Ala. 119, 67 So. 591. Such an agreement is not within the statute of frauds, supra. 37 C.J.S., Frauds, Statute of, § 119e, p. 615. Nor is it required by any other statute to be in writing." Id. at 587–588, 60 So.2d at 356.

It is the opinion of the court that the *Hunt* decision is clearly distinguishable on its facts. As the court there stated, the alleged contract was not for the sale of an interest in land; to the contrary, the plaintiff was merely contracting to furnish the use of its land. In other words, the plaintiff, while letting the defendants use the property, would not convey any title to the defendants. In the instant case, under the contract alleged by the plaintiff, the defendant would not be supplying the leases for the mere use of the plaintiff. Instead, the defendant would be conveying title to sixty-six per cent of the leases it owns. For this reason, this court concludes that *Hunt* is not apposite.

 On the other hand, there are other Alabama cases involving joint ventures which indicate that the statute of frauds is applicable to this case. In Butts v. Cooper, 152 Ala. 375, 44 So. 616 (1907), the complainant alleged that he and the respondent entered into an oral partnership agreement [11] whereby the complainant gave money to the respondent to purchase an interest in a lumber business, which included as part of its assets certain lands in Alabama. In holding that the alleged agreement was void under the statute of frauds, the court stated at 383, 44 So. at 618–619:

" * * * It is clear that the partnership was not formed when the agreement was made, for it could not exist until the interest was purchased. So it was simply a verbal agreement to purchase an interest in a partnership involving title to lands, and such agreement is violative of the statute of frauds. [cases cited]."

The principle of this case has subsequently been restated in Talley v. Talley, 248 Ala. 84, 26 So.2d 586 (1946) and in Pierce v. Murphree, 274 Ala. 20, 145 So.2d 207 (1962). In the latter case, the court stated that,

"Under the rules of our cases a parol, executory agreement for the purchase of an interest in land is invalid under the statute of frauds and this applies to partnerships and joint adventures. [cases cited]." Id. at 27, 145 So.2d at 214.

This court is aware that the three cases cited above involve oral agreements by two parties to purchase an interest in land, whereas the instant case involves an agreement by one party to transfer his interest in the land to a joint venture, or in reality, to transfer sixty-six per cent of his interest in land to the other party. However, this factual distinction does not change the substance of the transaction; there still exists an oral agreement to sell and to purchase an interest in land. For this reason, the court is of the opinion that the principle quoted above is applicable to this case. Accordingly, the statute of frauds is applicable to the alleged joint venture agreement.

Finally, plaintiff alleges in the alternative that the statute of frauds is not applicable because the alleged oral agreement it seeks to enforce is not the joint venture agreement, but the defendant's oral promise to reduce to writing the joint venture agreement. There appears to be only one case in Alabama that involves this question. In Shakespeare v. Alba, 76 Ala. 351 (1884), complainant filed a bill for specific performance of an oral agreement to execute a lease for a term of five years. The respondent asserted the defense of the statute of frauds. The court stated that an oral agreement to make a lease for a term

11. With respect to the application of the statute of frauds, partnership agree- ments and joint venture agreements are governed by the same rules.

of five years was within the statute of frauds. However, the statute was held inapplicable because of part performance.

 The court in the Shakespeare case does not articulate the difference between an oral agreement to reduce to writing a contract and the oral contract itself. Thus, even though the facts in that case clearly indicate that the complainant was seeking to enforce an oral agreement to execute or make a lease rather than an oral lease agreement, it is difficult to ascertain how much weight should be given to the opinion as a holding for the proposition that the statute of frauds applies to an oral agreement to reduce to writing a contract. It is possible to argue that the court, when speaking with regard to the statute of frauds, was thinking in terms of the lease itself and not the oral agreement to reduce to writing the lease. Nevertheless, whatever interpretation might be given to that case, it is the opinion of this court that the courts of Alabama would hold that an oral agreement to reduce to writing a contract, which is itself within the scope of the operation of the statute of frauds, is void and unenforceable; for this is the rule followed by most jurisdictions in the United States. See 49 Am.Jur. Statute of Frauds § 6 (1943), 37 C.J.S. Frauds, Statute of § 243 (1943). See generally cases cited in Annot., 58 A.L.R. 1015 (1929). The rule as stated in 49 Am. Jur., supra, is in part as follows:

> "While there are intimations to the contrary of the rule in a few scattered decisions, the general rule is that an oral agreement to reduce to writing a contract which is within the scope of the operation of the statute of frauds, or to sign an agreement which the statute of frauds requires to be in writing, is invalid and unenforceable. Neither promise is enforceable unless the statute is satisfied. In other words, a parol agreement invalid under the statute is not aided by a further parol agreement to reduce the principal agreement to writing. To allow the enforcement of such an agreement would be tantamount to taking the main contract out of the statute, and as has been said it is absurd to say that an oral promise in relation to certain subject matter is invalid, but that a promise that the party will thereafter bind himself with respect to the subject matter is valid. Such a construction would be a palpable evasion of the statute, and let in all the evils against which it is directed * * *."

Considering the foregoing, the court concludes that the Alabama statute of frauds applies to the alleged oral promise to reduce to writing the joint venture agreement.

In summary, the court finds that the plaintiff has failed to avoid the application of the Alabama statute of frauds. Accordingly, the defendant's motion for partial summary judgment is granted.[12]

---

12. Credit is due William L. Hinds, Jr., Law Clerk to the Court, for the preparation of this opinion.